Mark **RICHARD,**

v.

**CITY OF HARAHAN, et al.**

No. Civ.A. 95–3461.

United States District Court,
E.D. Louisiana.

June 30, 1998.

Keith Michael Couture, Chalmette, LA, for Plaintiff.

Frederick Nolting Dwyer, Bailey & Dwyer, Mandeville, LA, for Defendants.

## MEMORANDUM·OPINION

MENTZ, District Judge.

This civil rights action under 42 U.S.C. § 1983 arises from police involvement in execution of a Consent Judgment entered in the divorce proceedings of Angela· DiGerolamo Richard and her husband Mark Richard. Mark filed this action against the City of Harahan, the Harahan Police Department, Chief John J. Doyle, Detective Sergeant Henry Kuhn, Officer John Doe, Leah and Tony DiGerolamo (Angela's parents), and Dino Bonano (Angela's boss). Chief Doyle, Det. Sgt. Kuhn, and Officer Doe were sued in both their individual and official capacities. Prior to trial, the court dismissed Leah and Tony DiGerolamo and Dino Bonano under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under § 1983. The remaining defendants proceeded to trial before the court. After trial, the court directed verdict as to the City of Harahan, the Harahan Police Department, Chief Doyle in both his official and individual capacities, and Det. Sgt. Kuhn in his official capacity. These rulings leave only the claim against Det. Sgt. Kuhn in his individual capacity and the claim against Officer John Doe.

## I. FACTS

Mark and Angela entered a Consent Judgment addressing the use of certain household property pending the final partition of their property. The Consent Judgment granted Angela "exclusive use of the following items of community property pending a partition of community property: Entire baby bedroom set; baby toys; miscellaneous personal property of Angela DiGerolamo Richard, including clothes, picture frames, vanity table, etc. Said items are to be transferred to Angela DiGerolamo Richard on Sunday, October 23, 1994 at 12:00 Noon." The order does not provide for police to attend the transfer of property.

Subsequent to the parties entering the Consent Judgment and unbeknownst to Mark, Angela's attorney suggested that she have the police accompany her to the property transfer. The reason she felt police assistance was necessary was because of an encounter between Mark and Angela two days before the scheduled transfer of property. On Friday, October 21, 1994, Mark confronted Angela in the parking lot with her boyfriend and heated words were exchanged. Angela ran into her office and called 911, but she admitted at trial that Mark had not physically threatened her or anyone else. There was no police follow-up or report on

this incident. Angela told her boss Dino Bonano about the incident and asked him to help her get her things on Sunday, to which he agreed. Bonano is the Director of Citizens Services for Jefferson Parish. She also called Bob Lindsey, Director of Security for Jefferson Parish, for assistance. He called Det. Sgt. Kuhn, a personal friend of his, and asked him to help Angela with the property transfer. Lindsey told Kuhn about the incident at Angela's work place. Kuhn spoke with Angela and her mother on the morning of October 23. They related the work incident to him, and also told him that Mark kept numerous firearms in the house.

At the appointed time on October 23, Mark was speaking on the telephone with his mother waiting for Angela to arrive. He had already put a lot of Angela's things in plastic bags on the porch. He was not expecting police officers or anyone else other than Angela and her brother. Five police officers, only two of whom were in uniform, pulled in front of the house in at least three police cars. Angela did not appear, but her mother and brother did. In addition, Dino Bonano and a friend of his appeared. Bonano drove his car and trailer up onto the grass in the front yard.

There is considerable dispute between Mark's version of the events and the other witnesses' testimony. Kuhn's position is that his actions consisted merely of "standing by" to keep the peace. Mark contends that Kuhn threatened him, physically restrained him, and permitted an illegal search and seizure of his person and property. After considering the evidence and the credibility of the witnesses [1], the court resolves the disputed facts as follows.

Kuhn was the officer in charge at the scene. He first approached Mark's house while the others waited behind. Kuhn did not have a warrant or a court order authorizing him to assist in the property transfer. Kuhn did not have a copy of the Consent Judgment. Kuhn opened the door to the kitchen, pulled Mark out of the house and into the carport, causing the telephone to drop to the floor. Hearing the commotion, Mark's mother telephoned his attorney.

Kuhn threatened Mark that if he tried to interfere with the process political pressure would be brought to bear against Mark so that he would be found an unsuitable father for custody of his son. Mark then agreed to let the officers and everyone else except Dino Bonano and his friend into the house. When Mark objected to the presence of Bonano and his friend, Kuhn told Mark to "shut-up or else."

When they re-entered the house, Kuhn hung up the telephone. Mark's attorney then telephoned the house and spoke with Kuhn. She told Kuhn that he had no right to be present and demanded that the officers vacate the premises. Kuhn refused.

Kuhn let Bonano and Angela's brother walk ahead of him through all rooms of the house. Kuhn allowed them to search wherever they wanted. One of the other officers held Mark by his arm and led him from room to room. To Mark, it appeared that Bonano was in charge. During this process, Bonano broke a picture frame and a closet door. Later, when Bonano drove off, his car and trailer tore up the grass in the yard.

In addition to the property described in the Consent Order, Kuhn permitted some wedding presents of china and crystal to be taken over Mark's objection.

There is no evidence that during the course of the events on October 23, that Mark engaged in any violent, threatening, abusive or disrespectful behavior toward any person.

A few days later, Mark was driving his son to school when he recognized Kuhn in an unmarked police car following him on the Huey P. Long Bridge. Kuhn drove close to Mark's bumper and squeezed him close to the rail of the bridge. There was no physical contact or harm, but Mark believed that Kuhn was trying to run him off the bridge. Kuhn admitted that he was on the bridge that day, but denies that he tried to follow or harm Mark. There is no evidence that this incident was related in any way to a legitimate governmental purpose.

---

1. Kuhn was fired from the Jefferson Parish Sheriff's office for lying.

Mark also testified about an incident occurring several months later, in which he was awakened at 2:30 a.m. by Harahan police officers creeping outside his home. The officers called him outside and questioned him. It turned out that the officers had gone to the wrong house. There is no evidence that Kuhn was involved in this incident.

## II. *ANALYSIS*

### A. *Section 1983*

#### 1. *Legal Standard for Liability under Section 1983*

The elements of a claim under 42 U.S.C. § 1983 are: (1) that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under color of state law. *See* 42 U.S.C. § 1983; *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). The plaintiff has the burden of proving a civil rights violation under § 1983 by a preponderance of the evidence.

"The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). The rights Kuhn is alleged to have violated are Mark's "first amendment right to free association, fourth amendment right to be free from unlawful seizure of his person, his fifth and fourteenth amendment rights to due process of law, including the right to be free from unjustified and excessive force utilized by police, and his eighth amendment right to be free from pre-arrest incarceration and punishment." *See* Complaint at ¶ 30. The pre-trial order did not elaborate on these claims.

#### 2. *Constitutional Violations*

#### *First Amendment*

■ Mark claims that Kuhn's actions violated his right to free association as guaranteed by the First Amendment of the United States Constitution. The United States Supreme Court has recognized a constitutional right of free association in the context of "certain intimate human relationships," *Roberts v. U.S. Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984), and as a "derivative of the First Amendment rights of speech, assembly, petition for the redress of grievances, and the exercise of religion," *Hobbs v. Hawkins,* 968 F.2d 471, 482 (5th Cir.1992). Mark has not shown a constitutional violation of the First Amendment because there is no evidence that Kuhn interfered with his constitutionally protected relationships or associations. Kuhn's threat to interfere with Mark's parental rights does not rise to a level of a First Amendment violation.

#### *Eighth Amendment*

■ The Cruel and Unusual Punishment Clause of the Eighth Amendment applies to convicted prisoners and therefore is not applicable in this case. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1873 n. 16, 60 L.Ed.2d 447 (1979); *Graham v. Connor,* 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989).

#### *Fifth and Fourteenth Amendment Rights to Due Process of Law*

##### a. Excessive force in seizure

■ Mark claims that Kuhn violated his Fifth and Fourteenth Amendment rights to due process of law through the use of excessive force. Where the claim is that law enforcement officers have used excessive force in the course of a seizure of a free citizen, the proper analysis is under the Fourth Amendment and its reasonableness standard, rather than under the substantive due process clause of the Fourteenth Amendment. *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871. The due process clause of the Fifth or Fourteenth Amendment comes into play in claims of excessive force when an arrest is complete. *Gutierrez v. City of San Antonio,* 139 F.3d 441, 452 (5th Cir.1998) (citing *Brothers v. Klevenhagen,* 28 F.3d 452, 455–56 (5th Cir.1994), *cert. denied,* 513 U.S. 1045, 115 S.Ct. 639, 130 L.Ed.2d 545 (1994); *Valencia v. Wiggins,* 981 F.2d 1440, 1445 (5th Cir.1993), *cert. denied,* 509 U.S. 905, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993)).

There is no evidence that an arrest occurred in this case. In addition, the due process component of the Fifth Amendment applies only to federal actors. *Blackburn v. City of Marshall,* 42 F.3d 925, 930 n. 3 (5th Cir.1995). This case involves only state actors. Accordingly, Mark's claims under the Fifth Amendment must be dismissed, and his claim under the Fourteenth Amendment for excessive force should be analyzed under the Fourth Amendment.

b. Misuse of police vehicle

■■■ Mark's testimony about the incident on the Huey P. Long Bridge does implicate the Fourteenth Amendment. Because that incident did not involve a search, seizure, or use of force, the Fourth Amendment is not applicable. *See County of Sacramento v. Lewis,* —— U.S. ——, 118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043 (1998). The due process clause of the Fourteenth Amendment, however, includes a substantive right to be free from abusive use of government power without any legitimate law enforcement objective. *See e.g., Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). A government official's abuse of power must rise to the conscious-shocking level in order to be actionable under the Fourteenth Amendment. *County of Sacramento,* —— U.S. —— at —— – ——, 118 S.Ct. 1708, 1716–17, 140 L.Ed.2d 1043. What shocks the conscious depends on the circumstances of each case. *Id.* at 1718–19. It is clear, however, that negligent use of a police vehicle is beneath the threshold, while misuse of a police vehicle to terrorize a citizen can give rise to liability under the Fourteenth Amendment. *See id.* at 1719; *Checki v. Webb,* 785 F.2d 534, 538 (5th Cir.1986).

In this case, the court finds the evidence is insufficient to establish that Kuhn acted with any level of intent as opposed to negligence.

Accordingly, the court finds Mark has not established a violation of substantive due process under the Fourteenth Amendment in connection with the incident on the Huey P. Long Bridge.

*Fourth Amendment*

a. Unreasonable search and seizure

■■■ The Fourth Amendment guarantees an individual the right to be secure against "unreasonable searches and seizures" of their "persons, houses, papers, and effects." *See e.g., Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991); *Payton v. New York,* 445 U.S. 573, 584–90, 100 S.Ct. 1371, 1378–82, 63 L.Ed.2d 639 (1980). The applicable standard is one of objective reasonableness under the circumstances without regard to the officer's underlying intent or motivation.[2] *Graham,* 490 U.S. at 396–97, 109 S.Ct. at 1872.

■■■ A person is seized when government actors have "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." *Id.,* 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10 (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968)). A seizure of property occurs when there is a "meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County, Illinois,* 506 U.S. 56, 61, 113 S.Ct. 538, 542, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *Id.,* 506 U.S. at 63, 113 S.Ct. at 544.

■■■ The Fourth Amendment requires the state to have a warrant based upon probable cause to enter a person's home to con-

---

**2.** The circumstances suggest that politics may have fostered the excessive police response in this case. Prior to the incident involved in this lawsuit, Kuhn did not know Mark or the DiGerolamo's. However, many of the persons interested in Angela's welfare, including Angela herself, her father, and her boss are employees of Jefferson Parish. Harahan is a municipality of Jefferson Parish. Angela's father is the Director of Transportation in Jefferson Parish. Bonano is the Director of Citizen Services in Jefferson Parish,

and Angela worked for him. Kuhn was originally contacted by his friend, Bob Lindsey, who is Director of Security for Jefferson Parish. Kuhn threatened to use political influence to affect Mark's custody rights. The subjective motivations of an individual officer have no bearing on whether a particular seizure is reasonable under the Fourth Amendment. *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872–73. However, in the court's opinion, these circumstances do bear on the credibility of the witnesses.

duct a search and seizure. Warrantless searches and seizures inside a home are per se unreasonable, and therefore unconstitutional, unless they fall into one of the few specifically established and well-defined exceptions to the general rule. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *Payton,* 445 U.S. at 586, 100 S.Ct. at 1380; *Hartsfield v. Lemacks,* 50 F.3d 950, 954 (11th Cir.1995). A search and seizure in a person's home conducted pursuant to consent or exigent circumstances are two of the well-settled exceptions to the Fourth Amendment's warrant requirement. *United States v. Jenkins,* 46 F.3d 447, 451 (5th Cir.1995) (citing *Schneckloth,* 412 U.S. at 219, 93 S.Ct. at 2043). The voluntariness of consent is determined from the totality of the circumstances surrounding the search. *Schneckloth,* 412 U.S. at 226, 93 S.Ct. at 2047.

The facts are uncontested that Kuhn did not have a court order or other official document which gave him the right to participate in the transfer of property. The Consent Judgment was in the nature of an order of possession. It provided for a transfer of the specified property to Angela only. It clearly did not give the same powers as a search warrant. It did not authorize police presence or presence of anyone other than Angela.

Kuhn described his job at Richard's home as a "21 assist," police code for a situation where the officer is called to "stand-by" and make sure no problems arise. The policy of Harahan Police Department is that on a "21 assist" the police are not to take any position with respect to who gets what property. Kuhn maintains that he entered Mark's home with his consent, and that he did not participate in any search or seizure.

 Mere presence at the scene to prevent a breach of the peace does not violate § 1983 because the requisite state action is lacking. *See Williams v. Goldsmith,* 4 F.Supp.2d 1112, 1124–25 (M.D.Ala.1998); *Cofield v. Randolph County Comm'n,* 90 F.3d 468, 471–72 (11th Cir.1996); *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 512 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). On the other hand, "an officer may not actively assist or participate in a private seizure, unless the officer has the proper process ordering him to do so." *Williams,* at 1125.

The court finds that Kuhn acted in a more significant way than merely "standing-by." Usually only two officers attend a "21 assist," but on this day five officers showed up in at least three separate cars.[3] Kuhn did not knock or ask if they could enter the residence. Instead, he abruptly reached in and pulled Mark out of his house. Mark was confronted by nine people in his front yard—five officers and four citizens. Only two of the police officers were in uniform. Mark recognized only two of the nine people—his mother-in-law and his brother-in-law. A total of at least five cars were in front of his house. Kuhn threatened Mark with loss of custody of his son. When Mark objected to the presence of Bonano and his friends, Kuhn told him to "shut-up or else."

While the scene was relatively calm and without any physical violence, the show of force was undoubtedly intimidating and coercive. There is no evidence to suggest that exigent circumstances existed to justify Kuhn's actions. Mark could have reasonably concluded that he had no choice but to submit to Kuhn's authority or risk being subjected to harm. *See Specht v. Jensen,* 832 F.2d 1516 (10th Cir.1987) (affirming jury verdict finding police violated Fourth Amendment in search and seizure of plaintiff's office and home in connection with enforcement of an order of a repossession of property), *remanded on rehearing for reconsideration on other grounds,* 853 F.2d 805 (10th Cir.1988); *U.S. v. Edmondson,* 791 F.2d 1512, 1515 (11th Cir.1986) (suspect does not consent to entry of residence when consent is prompted by show of official authority); *Elam v. Montgomery County,* 573 F.Supp. 797, 803–04 (S.D.Ohio 1983) (finding issues of material fact as to whether plaintiff consented to search and seizure under facts similar to case at bar). The court finds that Mark did not

3. There are only 25 to 30 police officers in the Harahan Police Department, so the force at Mark's home constituted approximately six percent of the total Harahan police force.

voluntarily consent to the entry of his home by the officers. Mark's surrender to this show of authority constituted an unreasonable seizure for purposes of the Fourth Amendment.

The unreasonableness of Kuhn's conduct is further demonstrated by his subsequent refusal to leave the residence after Mark's attorney demanded that he leave. Her demands sufficiently put Kuhn on notice that the officers' presence was unwelcome and their conduct unlawful. Kuhn nevertheless failed to leave the premises. Kuhn's mere presence in the home violated the Fourth Amendment, and they were therefore obligated to leave when instructed to do so.

■ The evidence at trial establishes that Kuhn actively participated in the search and seizure. *See Specht,* 832 F.2d at 1524. Kuhn compounded his unlawful intrusion by allowing an officer to seize Mark's arm while walking him through the house, and by allowing citizens with no apparent or actual authority to enter Mark's home, search it, damage property, and seize possessions not included in the court order. "When a government official affirmatively facilitates or encourages an unreasonable search performed by a private person, a constitutional violation occurs." *Specht,* 832 F.2d at 1523 (citing *Booker v. City of Atlanta,* 776 F.2d 272, 274 (11th Cir.1985) and *Harris v. City of Roseburg,* 664 F.2d 1121, 1127 (9th Cir. 1981)). *See also Wanger v. Bonner,* 621 F.2d 675, 682 (5th Cir.1980) (One's home, "is entitled to the strictest Fourth Amendment protection against unwarranted intrusions"); *Ikerd v. Blair,* 101 F.3d 430, 433 n. 6 (5th Cir.1996) (plaintiff was "seized" for purpose of the Fourth Amendment when deputy grabbed her arm). The court finds that Kuhn's actions were objectively unreasonable and violated the Fourth Amendment's proscription against unreasonable searches and seizures.

### b. Excessive force

■ Whether a law enforcement officer used excessive force to effect a seizure in violation of the Fourth Amendment is analyzed under an objective examination of the reasonableness of the force used. *Graham,*

490 U.S. at 394–97, 109 S.Ct. at 1871–73. The assessment requires the court to carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests" at stake. *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)).

■ Under the current law, "[a] plaintiff is no longer required to prove significant injury to assert a section 1983 Fourth Amendment excessive force claim." *Harper v. Harris County, Texas,* 21 F.3d 597, 600 (5th Cir.1994) (citing *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992)); *Petta v. Rivera,* 143 F.3d 895 901 (5th Cir.1998).

■ In order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable. *See Spann v. Rainey,* 987 F.2d 1110, 1115 (5th Cir.1993) (internal quotations omitted).

■ The requirement of some injury does not necessarily mean a physical injury or even require physical contact. *See Petta,* 143 F.3d at 901–02 (14th Amendment violated where children passengers suffered psychological trauma only when officer fired gun at car); *McDonald v. Haskins,* 966 F.2d 292, 292–95 (7th Cir.1992) (plaintiff stated excessive force claim where officer held gun to head of child and threatened to pull trigger). Clearly, force can be expressed by means other than physical contact. The absence of physical injury, however, is a factor that may signify that the force was not excessive, and it should be considered with the totality of the other circumstances. *Petta,* at 901 (citing *Hudson,* 503 U.S. at 5–7, 112 S.Ct. at 998–99))).

■ The situation here shows that Kuhn used excessive manpower in an overly dramatic effort to surprise and coerce Mark to submit to his authority. He made only one

threat which could be interpreted as threatening physical harm when he told Mark to "shut-up or else." The only physical touching occurred when Kuhn pulled Mark out of the house and when the other officer held Mark's arm. Mark suffered no physical injury as a result of this incident. His only evidence of a psychological injury was his own testimony. Mark offered no psychological, medical, or other corroborating evidence to establish an injury. Mark has failed to establish the requisite element of an injury as the result of the use of force. *See Allison v. Citgo Petroleum Corp.,* —— F.3d ——, 1998 WL 244989 at * 11 (May 15, 1998). In the absence of an injury, Mark's claim that his Fourth Amendment right to be free from excessive force fails.

### 3. *Qualified Immunity*

 Government officials who perform discretionary functions are entitled to qualified immunity shielding them from individual liability as long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person in the defendant's position would have known. *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The applicable standard for examining qualified immunity is one of objective legal reasonableness in light of the rights of the parties involved. *Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984); *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739. Claims of immunity are thus to be analyzed by whether a reasonable official in the defendant's position could have believed that his conduct was lawful in light of the clearly established law and the information he possessed. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040. The actor's subjective good faith and views on the legality of the actions are irrelevant. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040; *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Harlow,* 457 U.S. at 815–19, 102 S.Ct. at 2736–39.

 The defense of qualified immunity involves a shifting burden of proof. *Salas v.*

*Carpenter,* 980 F.2d 299, 306 (5th Cir.1992). The defendant bears the initial burden of establishing that he was acting within the scope of his discretionary authority during the incident in question. *Id.* at 306; *Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). If the defendant meets this burden, then it shifts to the plaintiff. *Salas v. Carpenter,* 980 F.2d. 299, 306 (5th Cir.1992); *Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). Plaintiff has the burden to show that the law was clearly established when the violation occurred and that the defendant did not have an objectively reasonable belief that his conduct did not violate that clearly-established law. *See e.g., Burns–Toole v. Byrne,* 11 F.3d 1270, 1274 (5th Cir.), *cert. denied,* 512 U.S. 1207, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994).

The attempt of Officer Kuhn to keep the peace is clearly within his discretionary authority. *See Williams,* at 1128–29 n. 19.

It has long been established law that the constitution requires a police officer to obtain a warrant before entering and searching a home unless they obtain voluntary consent. *See e.g., Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). In this case, it was not objectively reasonable for Kuhn to believe that he had consent to enter and search Mark's home. He had no court order authorizing police intervention of any kind. He was not faced with exigent circumstances. Mark's consent was clearly not voluntary, especially in light of his attorney's subsequent demand that the police leave the premises. Accordingly, the court finds that Kuhn is not entitled to qualified immunity.

### B. *State Law Claims*

 Plaintiff's complaint asserted state law claims of false arrest, false imprisonment, violation of public records act, and gross negligence. None of these claims are mentioned in the pre-trial order. The pre-trial order sets forth issues for trial under § 1983 only. "'It is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial.'"

*McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1080 (5th Cir.1996) (quoting *Branch–Hines v. Hebert*, 939 F.2d 1311, 1319 (5th Cir.1991)). "Once the pretrial order is entered, it controls the course and scope of the proceedings under Federal Rule of Civil Procedure 16(e), and if a claim or issue is omitted from the order, it is waived, even if it appeared in the complaint." *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir.1998) (and cases cited therein). The court finds that Mark waived his state law claims.

### C. *Fictitious Defendant Officer John Doe*

Fictitious defendants "are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 36 (E.D.Pa.1990), *aff'd*, 946 F.2d 202 (3d Cir.1991). If, after discovery, the plaintiff is still unable to name the fictitious defendant, the claims against him should be dismissed. *Id.* at 37. As Mark never attempted substitution of or service on a party identified in lieu of Officer John Doe, the claim against Officer John Doe must be dismissed. The fictitious defendant remains a party to this action unless dismissed. *See Howell v. Tribune Entertainment Co.*, 106 F.3d 215 (7th Cir.1997) ("in the federal judicial system a party becomes a defendant not when he is served but when the complaint against him is filed"); Fed.R.Civ.P. 3. Rule 4(m) allows the court to dismiss a party which has not been served within 120 days of filing the complaint. Rule 21 of the Federal Rules of Civil Procedure allows this Court to drop parties on "its own initiative at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. Accordingly, the claims against Officer John Doe will be dismissed.

### D. *Damages*

#### 1. *Compensatory Damages*

Mark seeks both compensatory and punitive damages, plus attorney fees. A plaintiff is entitled to at least nominal damages for violation of a constitutional right. *Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir.1989) (citing *Memphis Community School District v. Stachura*, 477 U.S. 299, 106

S.Ct. 2537, 2544 n. 11, 91 L.Ed.2d 249 (1986); *Carey v. Piphus*, 435 U.S. 247, 265–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978); *Familias Unidas v. Briscoe*, 619 F.2d 391, 402 (5th Cir.1980)). Having found that Kuhn violated Mark's Fourth Amendment rights, Mark is entitled to an award of damages.

A plaintiff may be awarded only such damages as the evidence shows to have been caused by the defendant's wrongful conduct. *See Carey v. Piphus*, 435 U.S. 247, 263, 263–64, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978). The causation standard in section 1983 actions generally is proximate cause. *See, e.g., Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 753 (5th Cir.1993). Thus, Mark must show that the unreasonable search and seizure caused him compensatory damages.

"[C]ompensatory damages may include not only out-of-pocket loss and other material harms, but also such injuries as 'impairment of reputation, personal humiliation, and mental anguish and suffering.'" *Stachura*, 477 U.S. at 307, 106 S.Ct. at 2543 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974)).

> [C]ompensatory damages for emotional distress and other forms of intangible injury will not be presumed from mere violation of constitutional or other statutory rights. Specific individualized proof is necessary, and testimony from the plaintiff alone is not ordinarily sufficient. Compensatory damages may be awarded only if the plaintiff submits proof of actual injury, often in the form of psychological or medical evidence, or other corroborating testimony from a third party.

*Allison*, 1998 WL 244989 at * 11 (citing *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 938–40 (5th Cir.1996), *cert. denied*, — U.S. ——, 117 S.Ct. 767, 136 L.Ed.2d 713 (1997)).

Mark testified that he suffered stress, loss of sleep, and humiliation because of violation of his civil rights. He testified that after the incident at his home he was fearful of the threats Kuhn had made. For one week afterward, he did not sleep in his home. He

also believes that he lost his job due to the stress from this incident.

Mark's evidence of damages consisted solely of his own testimony relating to the mental suffering and humiliation he experienced. He submitted no medical evidence or any other evidence to assist the court in placing a value on his damages. There was no evidence that the he consulted any professional help. Mark presented no corroborating evidence to establish causation or any amount of lost wages. Although some of Mark's property was damaged and some items were illegally seized, the court has no evidence to assist it in placing a value on the property losses. Absent a showing of actual injury caused by a constitutional violation, a plaintiff is entitled to nominal damages only. *Carey v. Piphus,* 435 U.S. 247, 265, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978). Accordingly, the court finds that Mark is entitled to nominal damages of one dollar.

### 2. *Punitive Damages*

Punitive damages are designed to punish a wrongdoer for "willful and malicious conduct and to deter others from similar behavior." *Stachura,* 477 U.S. at 307 n. 9, 106 S.Ct. at 2543 n. 9. Thus, plaintiff must prove that the defendants' acts were "maliciously, wantonly, or oppressively done." In addition, "recovery of punitive damages must necessarily turn on the recovery of compensatory damages." *Allison,* 1998 WL 244989 at * 12.

Here, Mark's claim for punitive damages fails because he has not established that Kuhn acted with wilful or malicious intent, nor has he established any compensatory damages.

### 3. *Attorney Fees*

In an action under section 1983, the court has discretion to allow the prevailing party a reasonable attorney's fee as part of the costs. 42 U.S.C. § 1988. Mark is a prevailing party because of the award of nominal damages. *See Farrar v. Hobby,* 506 U.S. 103, 111–113, 113 S.Ct. 566, 573–74, 121 L.Ed.2d 494 (1992).

On the other hand, a nominal damage award is a factor that should be considered in deciding whether an award of attorney fees is reasonable. The Court in *Farrar* found that considerations of proportionality between the amount of the fees and the degree of the plaintiff's success should guide the decision whether to award fees and the reasonableness of fees. *Id.* 506 U.S. at 114–116, 113 S.Ct. at 574–75. Even though the damages awarded are nominal, attorney fees may be justified on the basis of the plaintiff having accomplished some goal that serves the public interest. *Id.* 506 U.S. at 121–22, 113 S.Ct. at 578 (O'Connor, J. concurring).

Here, Mark is awarded nominal damages for Kuhn's violation of the Fourth Amendment right against unreasonable searches and seizures. It appears to the court that the vindication of the constitutional right, rather than the recovery of private damages was the primary purpose in bringing suit. The petition specifically sought an award of compensatory damages, but it did not specify an amount. The pre-trial order did not mention damages. Mark prevailed on a significant substantive issue—the Fourth Amendment right to be free from unreasonable searches and seizures. This is not a case of a technical victory. Mark's success will have the effect of deterring future violations.

Accordingly,

IT IS ORDERED that judgment be entered in favor of defendants the City of Harahan, the Harahan Police Department, Chief John J. Doyle, Officer John Doe, Leah and Tony DiGerolamo, and Dino Bonano and against plaintiff Mark Richard, dismissing all claims of plaintiff Mark Richard against said defendants.

IT IS FURTHER ORDERED that judgment be entered in favor of plaintiff Mark Richard and against defendant Henry Kuhn in his individual capacity under 42 U.S.C. § 1983 in the amount of $1.00, together with costs, reasonable attorney fees to be determined by the court, and interest at the legal rate from entry of judgment.

IT IS FURTHER ORDERED that judgment be entered in favor of defendant Detective Sergeant Henry Kuhn in his official capacity and against plaintiff Mark Richard dismissing all claims of plaintiff Mark Rich-

ard against said defendant in his official capacity.

IT IS FURTHER ORDERED that plaintiff shall file a memorandum in support of attorney fees addressing the issue of a reasonable fee and otherwise complying with Local Rule 20.16 not later than **July 17, 1998.** A response brief may be filed not later than **July 31, 1998,** whereupon the issue will be decided on the briefs without oral argument.

## *JUDGMENT*

IT IS ORDERED, ADJUDGED, and DECREED that judgment be entered in favor of defendants the City of Harahan, the Harahan Police Department, Chief John J. Doyle, Officer John Doe, Leah and Tony DiGerolamo, and Dino Bonano and against plaintiff Mark Richard, dismissing all claims of plaintiff Mark Richard against said defendants.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that judgment be entered in favor of plaintiff Mark Richard and against defendant Henry Kuhn in his individual capacity under 42 U.S.C. § 1983 in the amount of $1.00, together with costs, reasonable attorney fees to be determined by the court, and interest at the legal rate from entry of judgment.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that judgment be entered in favor of defendant Detective Sergeant Henry Kuhn in his official capacity and against plaintiff Mark Richard dismissing all claims of plaintiff Mark Richard against said defendant in his official capacity.