GUIDRY, J.
| gPlaintiffs appeal the dismissal of their personal injury suit, alleging that excessive force was used in the execution of a search warrant by officers with the Baton Rouge Police Department (BRPD). Finding the evidence in the record before us supports the judgment of the trial court, we affirm.
FACTS AND PROCEDURAL HISTORY
On July 28, 2010, officers Jason Dohm, Michael Thompson, Charles Blacknell, Richard Arnett, Charles Karras, Danny Williamson and Randall Judd Wiedemann with the BRPD executed a search warrant for crack cocaine at 12429 Robbie Street in Baton Rouge. On arriving at the residence, police officers encountered Johnathan Carnell Williams, Sr. and Mona Monique Johnson outside the residence in the front yard. On observing the arrival of the police, Mr. Williams attempted to give a gun that he had been carrying to Ms. Johnson, who was standing next to him holding the couple’s infant daughter. On seeing Mr. Williams with the gun, however, Officer Blacknell yelled “gun” and immediately accosted Mr. Williams and handcuffed him. Thereafter, officers went to the door of the residence and used a battering ram to enter.
On entering the residence, the officers found the couple’s three other minor children inside. The children were escorted outside, and Mr. Williams and Ms. Johnson, who was also placed in handcuffs, were brought inside the home and questioned while a search was made of the residence. As a result of the search, the police recovered a clear plastic bag containing one gram of marijuana and $655 from a dresser in the couple’s bedroom. Mr. Williams was then placed under arrest and taken to the police station. Ms. Johnson was released from her handcuffs and detainment.
Mr. Williams and Ms. Johnson allege that they were beaten by police officers during the execution of the search warrant at their home on July 28, 2010. | .^Consequently, on March 18, 2011,[1] Mr. *546 Williams and Ms. Johnson (collectively “plaintiffs”) filed a petition for damages[2] against all the aforementioned police officers raising claims of excessive force pursuant to 42 U.S.C. § 1988, violation of due process under the Fifth and Fourteenth Amendments of U.S. Constitution, and infliction of cruel and unusual punishment in violation of the Eighth Amendment. Plaintiffs further asserted claims of general negligence under state law and requested recovery of costs and attorney fees pursuant 42 U.S.C. § 1988 and punitive damages pursuant to federal law.
Following a two-day bench trial, the trial court allowed the parties to submit post-trial briefs and took the .matter under advisement. The trial court ultimately determined that the defendant police officers had conducted a search of the plaintiffs’ home pursuant to a lawful search warrant obtained after narcotics detectives used a confidential informant to conduct a controlled buy of crack cocaine from Mr. Williams at the plaintiffs’ home. The trial court found that a “straight-arm bar take down” was performed on Mr. Williams to place him on the ground when Officer Blacknell saw him with a gun and that this maneuver, “more probable than not,” caused the laceration to Mr. Williams’ forehead. Additionally, the trial court found that medical evidence submitted by the plaintiffs did not corroborate the plaintiffs’ allegations that they were hit multiple times, primarily in the face, by police. Thus, reviewing the totality of the evidence, the trial court held that the plaintiffs failed to prove by a preponderance of the evidence that unreasonable force was used against them in the execution of the search warrant. Accordingly, the trial court signed a judgment on December 16, 2013, dismissing the plaintiffs’ claims against the defendants with prejudice.
^DISCUSSION
The elements of a claim under 42 U.S.C. § 1988 are: (1) that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under color of state law. The plaintiff has the burden of proving a civil rights violation under § 1983 by a preponderance of the evidence. Richard v. City of Harahan, 6 F.Supp.2d 565, 570 (E.D.La.1998). Acts of police officers who undertake to perform their official duties are included within the meaning of 42 U.S.C. § 1983, whether they hew to the line of their authority or overstep it. It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law. Whitney v. Mallet, 442 So.2d 1361, 1364 (La.App. 3d Cir.1983), writ denied, 445 So.2d 437 (La.1984).
In this case, the plaintiffs allege that the named officers with the BRPD violated their Fourth Amendment right to be free from unreasonable searches and seizures by the excessive force allegedly used by some of the officers in executing a search warrant of their residence. In their first two assignments of error, they assert that the trial court erred in not finding that the force used by police in conducting the search was both unnecessary and excessive.
*547 A claim of excessive force based on 42 U.S.C. § 1983 is a federal constitutional claim that is analyzed via Fourth Amendment constitutional standards. Penn v. St. Tammany Parish Sheriff’s Office, 02-0893, p. 4 (La.App. 1st Cir.4/2/03), 843 So.2d 1157,1159. In order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable. Richard, 6 F.Supp.2d at 573. The plaintiff is required to-show a significant injury that |firesulted from the use of objectively unreasonable force that was clearly excessive of the need. If an officer’s actions were grossly disproportionate to the need for action under the circumstances, rather than merely careless or unwise excess of zeal, so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under section 1983. Penn, 02-0893 at p. 4, 843 So.2d at 1160.
The test of reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case. Graham v. Con-nor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Thus, a determination of whether the force used under the circumstances was unreasonable is subject to the manifest error standard of review; that is, to determine whether the trial court’s conclusions were clearly wrong based on the evidence or clearly without evidentiary support. When two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. See Sims v. Ward, 05-0278, pp. 3-5 (La.App. 1st Cir.6/9/06), 938 So.2d 702, 704-05, writ denied, 06-2104 (La.11/17/06), 942 So.2d 535.
The plaintiffs and fourteen-year-old Huron Anderson, who was eleven years old at the time of the incident, testified that Officer Blacknell injured Mr. Williams by repeatedly punching him in the face and striking him on the forehead with the butt end of an assault rifle. They further testified that Corporal Dohm repeatedly slapped Ms. Johnson in the face with an open-handed fist. The plaintiffs also testified that one of Ms. Johnson’s legs was injured when she attempted to shield Mr. Williams with her legs while he was being punched by Officer Blacknell. According to the plaintiffs, they were seated on a couch with their hands | ^handcuffed[3] behind their backs at the time they were allegedly being physically assaulted by Officer Blacknell and Corporal Dohm.
*548 Officers Thompson, Blacknell, Dohm, and Wiedemann testified at trial, and Lieutenant Arnett’s deposition testimony was offered in lieu of his live testimony. All of the officers denied seeing either Officer Blacknell or Corporal Dohm strike or punch Mr. Williams or Ms. Johnson. Likewise, Officer Blacknell and Corporal Dohm denied any physical» assault of Mr. Williams or Ms. Johnson, other than the straight-arm bar take down of Mr. Williams by Officer Blacknell.
Nevertheless, to support their version of what occurred during the execution of the search warrant on July 28, 2010, the plaintiffs attempted to discredit the testimony of the police officers. The plaintiffs introduced evidence showing that Officer Thompson had been arrested and convicted of stealing evidence from the BRPD evidence room following the July 28, 2010 search of the plaintiffs’ residence. They also established that Officer Thompson suffered from an addiction to pain pills and was possibly under the influence of a controlled substance during the July 28, 2010 search. Additionally, the plaintiffs introduced a videotape of Corporal Dohm hitting a man with his police car as the man got out of his vehicle after having led the police on a high-speed chase for which he was later sued.
17Finally, to substantiate their claims, the plaintiffs submitted photographs of themselves taken after the incident and medical records for treatment they allegedly sought as a result of the physical assault by Officer Blacknell and Corporal Dohm. The trial court, however, found the medical evidence did not corroborate the plaintiffs’ allegations “that they were hit ‘multiple’ times — ‘several’ times about their face and body.” Reviewing the medical evidence, we cannot say that the trial court was clearly wrong in its conclusion.[4] Thus, considering the conflicting testimony presented by the parties, as well as the fact that the medical evidence introduced by the plaintiffs does not clearly corroborate their version of what allegedly occurred during the execution of the search warrant at their residence, we reject the plaintiffs’ first two assignments of error. Based on the evidence presented, the trial court was not manifestly erroneous in finding that the plaintiffs failed to meet their burden of proving a significant injury that resulted from the use of objectively unreasonable force that was clearly excessive of the need.[5] Likewise, for the same reason, *549 we find the plaintiffs’ state law claims of negligence premised on La. C.C. art. 2315 to be without merit.
Un their remaining assignment of error, the plaintiffs assert that the trial court erred in finding that Mr. Williams’ due process rights were not violated when he was “forced” to work off charges by selling drugs for the police. The trial court did not specifically address the plaintiffs’ violation of due process claim; however, silence in a judgment as to any part of a demand made in a litigation is construed as a rejection of that part of the claim. Hendrix v. Hendrix, 457 So.2d 815, 818 (La.App. 1st Cir.1984).
The due process clause of the Fourteenth Amendment includes a substantive right to be free from abusive use of government power without any legitimate law enforcement objective. A government official’s abuse of power must rise to the conscious-shocking level in order to be actionable under the Fourteenth Amendment. What shocks the conscious depends on the circumstances of each case. Richard, 6 F.Supp.2d at 571.
When asked at trial why he agreed to participate in a controlled drug buy for the police, Mr. Williams testified: “I really felt threatened at the time, you know. They had already beat me up, hit me in the head with a [rifle], and they saying stuff like, we are going to take your kids, we going to take your wife[6] to jail, so either you do something for us, you know.” However, Officer Thompson, Corporal Dohm, and Lieutenant Arnett all testified that the arrangement for Mr. Williams to assist with controlled drug buys was initiated by Mr. Williams. Mr. Williams signed a written agreement to act as a confidential informant for the police.[7] A recording of an interview in which Mr. Williams verbally agreed to cooperate with police was also introduced into evidence.
|9In the audio recording, Mr. Williams stated that he wanted to “help y’all [the police] make a bust to help myself,” and he was. willing to help himself out “by any means necessary.” He identified the type of bust as being a “drug bust” or “maybe, possibly, a weapon” and the type of narcotics as being “crack cocaine.” “When Mr. Williams was again asked if he understood that he did not have to participate in a drug bust, that he was not being made to do it, and that he was doing it of his own free will,” he repeatedly replied, “yes, sir.” And when asked one final time if he was “willing to go through with this,” Mr. Williams responded, “yes, sir” and used profanity to emphasize his willingness.
When describing a controlled drug buy in which Mr. Williams participated, both Lieutenant Arnett and Corporal Dohm stated that Mr. Williams did not actually purchase any drugs. Instead, Mr. Williams contacted an individual to arrange a controlled buy of crack cocaine, and the police later apprehended the person with whom Mr. Williams had made arrangements to buy cocaine outside of the presence of Mr. Williams.
*550 In considering the evidence presented in the record regarding Mr. Williams’ participation in the controlled drug buy with the police, we first observe that Mr. Williams was used to help facilitate the purchase of drugs, not the sale of drugs as argued by the plaintiffs in their brief on appeal. Second, while Mr. Williams asserts that he felt threatened and forced to cooperate with the police, the testimony of officers Thompson, Dohm, and Arnett, as well as the confidential informant agreement signed by Mr. Williams and the audio recording of his verbal agreement to participate in a controlled drug buy, all contradict Mr. Williams’ assertion. And finally, outside of Mr. Williams’ disputed assertion that he was threatened or forced to participate in the controlled drug buys, it is otherwise evident that performing undercover drug activities using a confidential informant is not only not an abusive use of government power, but such activity often furthers legitimate law-enforcement objectives of maintaining the law by combating the trafficking of drugs. Infiltration of drug rings and limited participation in the unlawful present practices of such rings is a recognized and permissible means of apprehension. See United States v. Russell, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973); Reaux v. Louisiana Board of Medical Examiners, 02-0906, p. 13 (La.App. 4th Cir.5/21/03), 850 So.2d 723, 732, writ denied, 03-2546 (La.11/26/03), 860 So.2d 1138.
Hence, we find no error in the trial court’s failure to find that Mr. Williams’ due process rights were violated by his participation in controlled drug buys for the police.
CONCLUSION
Accordingly, for the foregoing reasons, we find that the trial court properly dismissed the claims of the plaintiffs based on the evidence presented in the record. We therefore affirm. All costs of this appeal are cast to the plaintiffs, Johnathan Car-nell Williams, Sr. and Mona Monique Johnson.
AFFIRMED.

. Prior to filing their petition for damages, the plaintiffs filed a “Verified Petition to Take *546 Testimony and Discovery in Perpetuity” on September 8, 2010, to which they attached a draft of their proposed petition for damages and deposition notices.

. The plaintiffs filed suit individually and also on behalf of their minor children.

. Lieutenant Arnett testified that Ms. Johnson was seated separately from Mr. Williams, in a chair, but still handcuffed.
It should be noted that it is not uncommon for police to handcuff, for safety reasons, persons in or near the place to be searched in the execution of a search warrant for controlled substances when, as here, the location of the search is in a high crime area and the police have valid reasons to suspect the presence of weapons. See State v. Thompson, 11-0915, pp. 25-26 (La.5/8/12), 93 So.3d 553, 571-572; State v. Palmer, 09-0044, pp. 8-10 (La.7/1/09), 14 So.3d 304, 309-310; State v. Trotter, 37, 325, p. 8 (La.App.2d Cir.8/22/03), 852 So.2d 1247, 1252, writ denied, 03-2764 (La.2/13/04), 867 So.2d 689. In the affidavit to procure the search warrant, Corporal Dohm swore that a reliable confidential informant informed detectives that he had purchased at the plaintiffs’ residence a quantity of crack cocaine from a black male with a dark skin tone who appeared to be 25-30 years old, 170 pounds, and 5'9" in height, approximately. The confidential informant also stated that the unknown black male told him that he had additional quantities of crack/cocaine for sale, and the confidential informant also observed that the black male possessed a handgun.

. Ms. Johnson's medical records from her August 4, 2010 visit to the Baton Rouge General Medical Center reveal that she was diagnosed with contusion of the posterior scalp and left knee; however, this diagnosis appears to be largely premised on physical complaints made by Ms. Johnson. According to the same records, a physical exam of Ms. Johnson revealed that that she was "moderately tender to palpitation” over her posterior scalp and left knee, but there was "[n]o evidence of swelling or effusion” over the posterior scalp or left knee, that the skin over the "posterior scalp and left knee [was] intact with no areas of abrasions,” and generally her physical exam revealed ”[n]o evidence of significant external trauma.” Additionally, records from Our Lady of the Lake Regional Medical Center document that a physical exam of Ms. Johnson on July 28, 2010, the date of the incident, revealed "NO EVIDENCE OF ACUTE BRUISING, ABRASIONS OR LACERATIONS ON ENTIRE BODY."

. We feel it prudent to further mention that while the trial court did not specifically address the photographs the plaintiffs submitted to substantiate their claims of physical injury, we observe that other than the laceration on Mr. Williams' forehead, none of the other injuries alleged by the plaintiffs are readily apparent in the photos submitted. In particular, there are no discernible signs of discoloration or swelling in the photographs of Ms. Johnson. And Mr. Williams' lips do not appear to be unusually or abnormally swollen in his photos, which are slightly blurred. Considering the trial court’s vantage point of be *549 ing able to compare the photographs to the live appearance of the plaintiffs in court, we feel particularly constrained by the manifest error standard of deference in light of the equivocal and conflicting nature of the evidence presented.

. It is unclear from the record whether Mr. Williams and Ms. Johnson were married. Mr. Williams sometimes referred to Ms. Johnson as his wife and then other times referred to her as his girlfriend. In the medical records submitted into evidence, the marital status of both plaintiffs was listed as "single."

. The agreement is titled "Conduct and Conditions of Cooperating Individuals (C.I.)."