Richard GLADDEN, Plaintiff–Appellant,
Cross–Appellee,

v.

Randy W. ROACH (Officer), et al.,
Defendants–Appellees,

and

City of Denton, Defendant–Appellee
Cross–Appellant.

No. 87–6173
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 8, 1989.

Don Gladden, Fort Worth, Tex., for plaintiff-appellant cross-appellee.

Ronald H. Clark, Henderson, Bryant & Wolfe, Sherman, Tex., Debra Adami Drayovitch, Denton, Tex., for all defendants except Roach.

Louis Bright, Austin, Tex., Patricia Higginbotham, Asst. Atty. Gen., Dallas, Tex., for Roach.

Before GEE, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

GEE, Circuit Judge:

Richard Gladden filed suit under 42 U.S. C. § 1983, alleging that Officer Randy Roach of the North Texas State University (NTSU) Police, members of the Police Department of Denton, Texas, the City of Denton, and others, had violated his rights under the First, Fourth, Fifth, and Fourteenth Amendments. The complaint also contained state law claims. The violations alleged in the complaint arose out of two separate arrests of Gladden, one by NTSU and one by Denton police officers. After a trial, several interrogatories were submitted to the jury, which returned a verdict for the defendants on all of the interrogatories.

Both parties made motions for judgment, and in a memorandum opinion the district court found that Gladden's civil rights had been violated by his detention for 87 hours after his September 15, 1984, arrest. The district court awarded Gladden nominal damages of $1.00 for the violation.

On April 23, 1983, NTSU police officer Randy Roach arrested Gladden for public intoxication. After arresting Gladden, Roach transported him to the university police station for booking. Roach, in an effort to fill out the arrest report, asked Gladden for his name, address, and date of birth. Gladden refused to answer the questions, asserted that he had a right to remain silent, and requested that he be allowed to call his attorney. Roach informed Gladden that if he continued to refuse to answer, he would be charged, under Texas Penal Code Article 38.02, with failure to identify himself to a police officer. Gladden attempted to use the phone without permission and was physically restrained by Officer Roach. Roach then transported Gladden to the Denton Municipal Jail, where Gladden was charged with public intoxication and failure to identify himself. Gladden posted a cash appearance bond. The charge of failure to identify was dismissed on Gladden's motion, and a jury found Gladden not guilty of the public intoxication charge.

On September 15, 1984, Denton Police Officer Britt arrested Gladden. The arrest occurred when officers attempted to shut down a loud party about which they had received at least two complaints. Gladden, who was a guest at the party, interfered with the officers and Britt arrested him for public intoxication and disorderly conduct. Gladden contends that Britt lacked probable cause for the arrest.

Following the arrest, Gladden was transported to the Denton police station where he again refused to answer when asked his name, address, and other booking information. Two of Gladden's friends came to the jail and posted $200 bond to free him. After the officers completed the necessary paperwork to free Gladden, they retrieved his personal property to return to him, but Gladden refused to accept the bond. Gladden was held for 87 hours before he was arraigned before a magistrate and released on a $400 surety bond.

■ Gladden contends that the district court erred in holding that he did not have an absolute right to remain silent after his arrest on April 23, 1983. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself...." U.S. Const. Amend. V. The Supreme Court held in *Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1627–1628, 16 L.Ed.2d 694 (1966), that once a defendant in custody asks to speak with a lawyer all interrogation must cease until a lawyer is present. The *Miranda* safeguards apply whenever a person in custody is interrogated, either by express questioning or its functional equivalent. *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). Interrogation is defined as words or actions that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Id.*

We held in *United States v. Menichino,* 497 F.2d 935, 941 (5th Cir.1974) that biographical questions, which are part of the booking routine and are not intended to elicit damaging statements, are not interrogation for Fifth Amendment purposes. Thus, it is permissible for officers to ask straightforward questions to secure the biographical data necessary to complete the booking process. Other circuits have held that questions seeking biographical information for booking purposes do not constitute interrogation or its functional equiva-

lent. *See United States v. Morrow,* 731 F.2d 233, 237 (4th Cir.), *cert. denied,* 467 U.S. 1230, 104 S.Ct. 2689, 81 L.Ed.2d 883 (1984); *United States v. Kane,* 726 F.2d 344, 348–49 (7th Cir.1984); *United States v. Sims,* 719 F.2d 375, 378–79 (11th Cir. 1983), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984).

■ While it is conceivable that questions about a person's identity or residence could be incriminating, or lead to incriminating information, on the facts of this case such statements were not incriminating. Identity was not an element of either the crime of public intoxication or that of disorderly conduct. The district court did not err, therefore, in holding that Gladden did not have an absolute right to remain silent following his arrest.

Gladden also asserts that the district court erred in ruling that Texas Penal Code Article 38.02 as applied to him on April 23, 1983, did not violate the Fourth,[1] Fifth, and Fourteenth Amendments. Gladden asks this court to declare Article 38.02 unconstitutional as applied to the plaintiff and to grant him injunctive relief from having the statute enforced against him in the future.

■ The State of Texas argues that Gladden lacks standing to seek injunctive relief. This contention has merit. One seeking injunctive relief must demonstrate a real and immediate threat that he will be subject to the behavior which he seeks to enjoin. It is not sufficient for the plaintiff to speculate that he will be subject to injurious conduct if the practice is continued or the law remains on the books. *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

■ Gladden was charged with a violation of Article 38.02 only at the time of his April 23, 1983, arrest. He was not charged with violating the statute the other time he was arrested nor has he demonstrated that he is realistically threatened by the statute. The record does not suggest that Gladden is any more likely than other persons to be

---

**1.** Gladden mentions the Fourth Amendment, but does not brief the issue. Issues stated but not briefed need not be considered by the court.

*Morrison v. City of Baton Rouge,* 761 F.2d 242, 244 (5th Cir.1985).

subjected to a charge of failure to identify. Additionally, the statute has been amended since Gladden's arrest. At the time of Gladden's arrest, Art. 38.02 made it an offense for a person "lawfully stopped" by an officer to fail to identify himself to the officer. The statute was amended, effective September 1987, to require a lawful arrest before identification is required. Nothing in the record suggests that Gladden is more likely to be arrested than other people. *See Brown v. Edwards*, 721 F.2d 1442, 1446–47 (5th Cir.1984). Since he lacks standing, Gladden cannot receive the equitable relief he requests.

Gladden asserts that *City of Houston v. Hill*, 482 U.S. 451, ——, n. 7, 107 S.Ct. 2502, 2508 n. 7, 96 L.Ed.2d 398, 410, n. 7 (1987), is analogous to his situation and provides him with standing. In *Hill*, a municipal ordinance made it unlawful for a person to interrupt a police officer in the performance of duty. Hill, a "gay" activist, had been arrested four times for violating the ordinance; the last arrest involved only verbal "interference." Hill sought an order permanently enjoining enforcement of the ordinance. At the hearing on the injunction, Hill testified that he planned to continue to interrupt "nonviolently any illegal police activity" he observed at any time, under any circumstances. 107 S.Ct. at 2505 n. 1. The Supreme Court concluded that Hill's stated intention to interfere meant he confronted a genuine threat that the statute would be enforced against him. *Id.* n. 7. Gladden asserts that his statement that he would sue officers Roach and Hooper for their allegedly illegal conduct "if it takes me the rest of my life," is akin to the statement in *Hill.* This argument is meritless. Gladden cannot use his isolated statement of April 23, 1983, to elevate himself to the role of "citizen provacateur," *Hill*, 107 S.Ct. at 2508 n. 7, so as to accord him standing.

Insomuch as Gladden's second assignment of error seeks to overturn the trial court's decision that the ordinance was not unconstitutionally applied to him on April 23, 1983, this argument does not differ from his first assignment of error. The basis of Gladden's argument on this point is that the Article 38.02 imposes a cost on his assertion of his Fifth Amendment privilege to remain silent; but if no such privilege exists, then clearly the statute does not unconstitutionally impose a cost on the exercise of it. Consequently, even had the court found that Gladden had standing to request injunctive relief, it properly denied it.

Gladden also asserts that Officer Britt lacked probable cause to arrest him on September 15. That arrest occurred after Gladden interfered when officers attempted to shut down a loud party. The arrest was for disorderly conduct and public intoxication. Gladden argues that the court's instruction on the elements of the offense of disorderly conduct failed to properly define that offense, so that the jury could determine whether Officer Britt had probable cause to arrest him on that charge.

The evidence introduced at trial, however, was sufficient for the jury to conclude that Officer Britt had probable cause to arrest Gladden for public intoxication.[2] Probable cause to arrest exists when the arresting officer, at the time of the arrest, has knowledge sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. *United States v. Bertram*, 719 F.2d 735, 738 (5th Cir.1983). Even assuming that the district court erred in its instruction on the disorderly conduct ordinance, the jury could have concluded from the evidence that Officer Britt's arrest of Gladden for public intoxication was supported by probable cause. While Gladden contests this finding, he presents no evidence to the contrary. The officer only needed probable cause to believe that one offense had been committed to arrest Gladden. The officer had such probable cause.

---

**2.** Gladden states that he is not conceding probable cause for public intoxication, but submits no argument on the issue.

Further, to the extent that the district court's instruction on disorderly conduct may have been erroneous, the error was favorable to Gladden. The ordinance defined disorderly conduct as one of seven designated acts causing or designed to cause a public danger, alarm, disorder, or nuisance. The seven acts are written in the disjunctive. The district court's instruction ran the seven together, perhaps creating the impression that a lawful order of dispersal by a police officer was a necessary predicate to any charge of disorderly conduct. There was, therefore, sufficient evidence to sustain the jury's finding that Officer Britt had probable cause to arrest Gladden.

■ Gladden contends that requiring a defendant arrested on a charge for which a period of incarceration is not provided as a penalty to post bond as a condition of release violates his constitutional due process rights. Gladden cites an unpublished opinion from the Eastern District of Virginia in support of this contention. In the Virginia case, *Allen v. Burke*, the district court held that, as to defendants who were unable to post bond, a requirement that a cash bond be posted for non-jailable offenses violated the due process and equal protection clauses. Here, however, unlike *Allen*, Gladden could have posted bond. He merely refused to do so, arguing that the requirement violated his due process rights.

The gist of Gladden's due process argument is that demanding that a defendant post bond as a pre-condition for release following arrest on a non-jailable offense is "arbitrary, purposeless, excessive, without legitimate or rational goal, and is inherently punitive in its character." The purpose of requiring that a defendant post bail as a pre-condition of release following arrest is to insure the defendant's attendance at trial. The fact that the penalty which may be imposed at trial does not include incarceration is not, in and of itself, a guarantee that a defendant will appear for trial. As in any other case, requiring a defendant charged with a non-jailable offense to post bond insures that he will appear for trial. Gladden's argument that his due process

rights were violated by requiring him to post bond is without merit.

■ Gladden assigns as error the district court's instruction to the jury on mitigation of damages. Gladden contends that the instruction should not have been given and, alternatively, that, if the instruction was proper, it was improperly worded and prejudicial.

The court's instruction stated:

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to mitigate those damages, that is, to take advantage of an opportunity he may have had under the circumstances to reduce or minimize the loss or damage.

So, in regard to plaintiff's arrest and detention on September 15, 1984, *if you should find from a preponderance of the evidence that plaintiff failed to seek out or take advantage of an opportunity to be released from jail, that was reasonably available to him under all of the circumstances shown by the evidence,* including the bail bond tendered by Robbie Robison and any opportunity his father may have had to obtain his release, if ye so find, than *you should reduce the amount of his damages by the amount of any damages he could have avoided* if he had taken advantage of such opportunity. (Emphasis added.)

Gladden's objection is that the instruction did not make it clear to the jury that only reasonable opportunities or reasonably available opportunities were to be considered for purposes of mitigation. The objection is meritless. The instruction made it clear to the jury that the duty to mitigate was not absolute, and that Gladden was only required to avail himself of reasonable opportunities to mitigate his damages.

Gladden asserts that the district court erred in failing to submit to the jury his common-law cause of action for false imprisonment. The district court did not instruct the jury on the elements of the state tort of false imprisonment, nor did it instruct the jury that separate damages for

that tort might be available. Gladden also asserts that the district court erroneously instructed the jury that the individual police officers had a good faith defense to false imprisonment. A reading of the instruction indicates that while the district court stated that they had a good faith defense, it appears that this was intended to relate solely to the section 1983 claim.

■ Under Texas law, the elements of false imprisonment are: "(1) willful detention; (2) without consent; and (3) without authority of law." *H.E. Butt Grocery Co. v. Saldivar*, 752 S.W.2d 701, 702 (Tex.App. 1988). The municipal defendants, citing *Rains v. Corrigan Properties, Inc.*, 600 S.W.2d 895 (Tex.App.1980) and *Rains v. Crow*, 601 S.W.2d 774 (Tex.App.1980), assert that they are immune from liability for false imprisonment because the initial arrest of Gladden was lawful. The municipal defendants misapprehended the cause of action. The detention of Gladden beyond 24 hours was found to be unreasonable; therefore, the officers have no defense of having detained Gladden under lawful authority. Nor do the officers have a general good-faith defense to the state tort of false imprisonment. *Douthit v. Jones*, 619 F.2d 527, 537 (5th Cir.1980).

Texas courts have recently applied the official immunity doctrine to shield police officers from liability for actions taken during the course of criminal investigation. *Wyse v. Department of Public Safety*, 733 S.W.2d 224, 227 (Tex.App.1986). *Wyse* stated that public officials whose actions are quasi-judicial or discretionary enjoy immunity, as long as they act with good faith within the scope of their authority. It cannot be argued that the officers were acting within the scope of their discretionary authority in detaining Gladden without arraignment for beyond 24 hours. Therefore, the court should have submitted Gladden's false imprisonment claim to the jury. The court's error does not, however, require reversal or remand of this case.

■ The district court instructed the jury that as a matter of law Gladden's constitutional rights had been violated after 24 hours had expired without his being

arraigned. Interrogatory No. 3 asked the jury what amount would compensate Gladden for injuries he sustained, if any, as a result of his being held in the city jail for more than 24 hours. The jury answered that no damages had been suffered. The damages, if any, on the false imprisonment would have been identical to those suffered as a result of the constitutional violation. Since the jury awarded no damages, no remand is necessary.

The municipal defendants appeal the district court's denial of their request for an interrogatory inquiring whether Gladden goaded the officers into arresting him in order to set up a lawsuit. The municipal defendants objected to the district court's failure to submit such an interrogatory.

The city contends that Gladden goaded the officers into arresting him on September 15, 1984, in order to allow him to file suit. The city points to Gladden's March 1984 arrest, at which time he refused to post bond and his behavior on the evening of September 15, 1984, as indications that the events were a contrivance by Gladden. The city also notes Gladden's statement after his April 1983 arrest that he would do something about illegal police conduct if it took the rest of his life. The municipal defendants contend that the rationale of *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) and *Clark v. Bird*, 354 F.2d 977 (1st Cir.), *cert. denied*, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966) should be extended to prevent defendants who "set up" their own arrests from recovering even nominal damages.

*Pierson* did not reach the general question whether a section 1983 plaintiff may be denied damages if he goaded or "set up" the defendant. It simply found that such a theory was inapplicable to the case before it. *Pierson*, 386 U.S. at 558, 87 S.Ct. at 1219–20. In *Clark*, testimony revealed that plaintiff had arranged, for no discernible reason, to be arrested. The First Circuit refused to allow the plaintiff to recover for his staged arrest. *Clark*, 354 F.2d at 977–78. While *Clark* may stand for the proposition that a defendant may not recover damages for a set-up arrest, the record

does not support the application of the *Clark* theory to the facts of this case, since it does not appear that Gladden intended to be arrested.

The judgment of the district court is AFFIRMED.