Patricia DAVENPORT

v.

Ronald RODRIGUEZ et al.

No. CIV. A. G–00–755.

United States District Court, S.D. Texas, Galveston Division.

May 9, 2001.

Robert Thomas Rice, Rice Vaughan, et al., Angleton, Chad Matthews, Sanes & Matthews, Angela Dione Johnson, Sanes & Matthews, Houston, for Patricia Ann Davenport, plaintiff.

William Scott Helfand, Magenheim Bateman, et al., Houston, Robert L. LeBoeuf, LeBoeuf & Wittenmyer, Angleton, for Ronald Rodriguez, the City of Brazoria, Texas, Tina Stewart, Vernon Stewart, Brazoria County Stewart Food Market, Inc., defendants.

### *ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT*

KENT, District Judge.

Plaintiff Patricia Davenport brings this action against, inter alia, Officer Ronald Rodriguez, the City of Brazoria, and the grocery store where she worked. Plaintiff's claims arise from her arrest for allegedly stealing twenty-five dollars. Now before the Court is Defendants' Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement. For the reasons stated below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART.**

### *I. BACKGROUND*

Plaintiff was formerly employed with Defendant Stewart Food Market, Inc. ("Stewart Food") as a cashier. If Plaintiff's allegations are believed, the following events transpired. On July 22, 1999, while she was at work, Plaintiff was escorted to an upstairs room of the store by Defendant Tina Stewart. In this room, she was confronted by Defendant Vernon Stewart,

the owner of Stewart Food, and Police Officer Ronald Rodriguez ("Officer Rodriguez"). Mr. Stewart accused Plaintiff of stealing twenty-five dollars from a cash register and placing it in her pocket. He then stated that he was filing charges against her. At this point, Officer Rodriguez arrested Plaintiff. Plaintiff was handcuffed, "shoved into a patrol car," and taken to the police station where she was photographed, strip searched, and forced to change clothes in public view. She was then held in a cell for two hours before being read her *Miranda* rights and being allowed to make a phone call. Plaintiff was released an hour later after a detective went to Stewart Food to investigate. The allegedly stolen money was not found on Plaintiff's person. Officer Rodriguez told her upon leaving, however, "you're being released, but still under investigation. My gut feeling is that you are guilty. We are going to investigate you, and I will come to your house and arrest you. We didn't find any money, we don't know what you did with it."

Plaintiff brings an action under 42 U.S.C. § 1983 against Officer Rodriguez and the City of Brazoria ("the City") for alleged constitutional violations. In particular, she alleges that Officer Rodriguez arrested her without probable cause and used excessive force in violation of Plaintiff's Fourth Amendment rights. In addition, Plaintiff alleges that the City is liable for inadequately performing background checks on the officers it employs and having a "get tough" policy of intimidation against the employees of Stewart Food. These policies and customs, Plaintiff contends, caused the constitutional violations. In addition, Plaintiff brings state law claims for negligence and intentional infliction of emotional distress.

Plaintiff further alleges that three individual Defendants, Officer Rodriguez, Vernon Stewart, and Tina Stewart falsely stated to Plaintiff's granddaughter and others that Plaintiff was a thief. Thus, Plaintiff brings a defamation action against these three Defendants, as well as a claim for intentional infliction of emotional distress.

## II. ANALYSIS

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants have moved to dismiss Plaintiff's § 1983 and state law tort claims on the grounds that they fail to state a claim upon which relief can be granted. In the alternative, Defendants have moved pursuant to Fed.R.Civ.P. 12(e) for a more definite statement of the basis of Plaintiff's constitutional claims against Officer Rodriguez.

■ When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994). The United States Court of Appeals for the Fifth Circuit has noted that dismissal for failure to state a claim is disfavored and will be appropriate only in rare circumstances. *Mahone v. Addicks Util. Dist. Of Harris County,* 836 F.2d 921, 926 (5th Cir.1988). Finally, the Court notes that recent judicial attempts to impose a "heightened pleading standard" for § 1983 claims against municipalities have been expressly rejected by the Supreme Court. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 167, 113 S.Ct.

1160, 1163, 122 L.Ed.2d 517 (1993) ("We think it impossible to square the "heightened pleading standard" applied by the Fifth Circuit in this case with the liberal system of "notice pleading" set up by the Federal Rules."). Thus § 1983 claims against municipalities are governed by the standard of Fed.R.Civ.P. 8(a)(2), and Plaintiff need only submit "a short and plain statement of the claim showing the pleader is entitled to relief."

■ Since Defendants filed their Motion to Dismiss, the Court has given Plaintiff leave to amend her Complaint. Plaintiff has accordingly filed a Third Amended Original Complaint. There is no question that this is now the "live" Complaint, superseding the Second Amended Original Complaint. However, there is some question respecting the precise effect Plaintiff's amendment must have on Defendants' Motion to Dismiss. At least one panel of the Fifth Circuit has stated that a Motion to Dismiss filed in response to an Original Complaint does not address a subsequently filed Amended Complaint. *See Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 302 (5th Cir.1989) (stating that for purposes of preserving an appeal, a Rule 12(b)(6) Motion filed in response to an Original Complaint did not address the amended Complaint). Read by itself, that language would seem to indicate that Defendants' Rule 12(b)(6) Motion is void. However, such an interpretation seems to elevate form over substance. *See* 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1476 (1990). A more natural interpretation is one that would consider the differences between the Original Complaint and the amended version. To the extent that the defects raised in the Motion to Dismiss remain in the Amended Complaint, a court should simply apply the Motion to that pleading. *See* Wright & Miller, *supra,*

§ 1476 (stating that a court should not require defendants to file a new Motion to Dismiss "simply because an amended pleading was introduced while their motion was pending"). Thus, it becomes necessary to examine each of the claims articulated in Plaintiff's Third Amended Original Complaint in light of the defects in her Second Amended Original Complaint raised by Defendants' Motion to Dismiss.

### A. *Plaintiff's Claims under § 1983*

■ Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir.1989).

■ Before Plaintiff can successfully assert § 1983 as a valid cause of action against Defendants, Plaintiff must first identify one or more specific constitutionally protected rights that have been infringed. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).

### 1. *Constitutional Violations*

Plaintiff alleges two constitutional violations as the basis of her § 1983 action. First, she claims that she was arrested without probable cause, in violation of her Fourth Amendment rights against unreasonable searches and seizures. Second, she claims that Officer Rodriguez used excessive force in arresting her, also in violation of her Fourth Amendment rights. The Court finds that Plaintiff has stated a claim for false arrest, but not for excessive force.

■ An individual has a clearly established right to be free from unlawful arrest. *See Duckett v. City of Cedar Park,* 950 F.2d 272, 278 (5th Cir.1992). An arrest or detention may be unlawful if it is accomplished without due process of law as required by the United States Constitution. *See Baker v. McCollan,* 443 U.S. 137, 144–45, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979). Police officers are thus required under the Fourth Amendment to make a determination of probable cause before performing a custodial arrest. *See Martin v. Thomas,* 973 F.2d 449, 453 (5th Cir.1992); *Fields v. City of S. Houston,* 922 F.2d 1183, 1189 (5th Cir.1991). An officer has probable cause to arrest if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime. *See Gladden v. Roach,* 864 F.2d 1196, 1199 (5th Cir.1989).

■ Plaintiff has alleged that Officer Rodriguez lacked probable cause to arrest her. Officer Rodriguez did not witness the alleged criminal behavior and thus presumably made his decision to arrest based on the accusation of Mr. Stewart. Whether Officer Rodriguez had knowledge that would warrant a prudent person's belief that Plaintiff had already committed the alleged crime is highly dependant on the particular facts and circumstances. What he was told by Mr. Stewart and his own observations would be highly relevant. Thus, 12(b)(6) dismissal for failure to state a claim would be inappropriate. Plaintiff is entitled to discovery on this issue. Given the fact that Officer Garcia did not witness the alleged theft, no money was found on Plaintiff's person, and Plaintiff was ultimately released, Plaintiff has stated a claim which can survive a Motion to Dismiss.[1]

■ Plaintiff fails to state a claim for excessive force, however. Claims involving the use of excessive force are based upon an alleged violation of the Fourth Amendment. *Graham,* 490 U.S. at 388, 109 S.Ct. at 1867–68. In order to sustain a cause of action for use of excessive force, the evidence must establish that the use of force was "objectively unreasonable." *Id.* at 397, 109 S.Ct. at 1872. The Fifth Circuit has established a three-part test for consideration of a claim of excessive force brought under § 1983. In order to prevail under this statute, the Plaintiff must show (1) an injury (2) which resulted directly and only from a use of force that was clearly excessive to the need, and (3) the excessiveness of which was objectively unreasonable. *Fontenot v. Cormier,* 56 F.3d 669, 674 (5th Cir.1995); *Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989) (en banc).

■ The only use of force alleged by Plaintiff is Rodriguez's action of placing her in handcuffs and "shoving" her into the police car. Plaintiff alleges only psychological injuries, though some of these injuries allegedly had subsequent physical manifestations. Whether or not there is a physical injury requirement for an excessive force claim,[2] Plaintiff does not proper-

---

1. Defendants have argued in the alternative that Plaintiff should be required to give a more definite statement. This is discussed in section A.4, *infra.*

2. Defendants cite *Petta v. Rivera,* 143 F.3d 895, 899 (5th Cir.1998) for the proposition that a purely psychological injury cannot give rise to a claim for excessive force. To the contrary, *Petta* stands for the proposition that a purely psychological injury could support a constitutional violation, but in the context of a Fourteenth Amendment due process claim. *See id.* at 903. Prior to *Petta* the issue had not been decided one way or another in the context of a Fourth Amendment excessive force claim. *See id.* at 909 n. 22 (citing *Ikerd v. Blair,* 101 F.3d 430, 434 & n. 10 (5th Cir.1996) (declining to decide the issue)).

ly allege a claim for excessive force. Had Plaintiff alleged that she was handcuffed too tightly, for instance, or that the officer had pointed a gun at her and threatened to shoot while she was being arrested, she may have stated a claim. *See Heitschmidt v. City of Houston,* 161 F.3d 834, 839–40 (5th Cir.1998) (holding that an allegation that Plaintiff was handcuffed too tightly for four hours and denied access to the bathroom while being detained during the search of a house stated a claim for excessive force); *Thompson v. City of Galveston,* 979 F.Supp. 504, 509–10 (S.D.Tex. 1997) (Kent, J.) (suggesting that an action might lie for excessive force for a police officer holding a gun to the head of a nine year old and threatening to pull the trigger). Merely being handcuffed and taken to the police station, however, is not excessive force, but standard police practice. There is no right against being handcuffed. *See Peters,* 57 F.Supp.2d at 374–75 (holding that being handcuffed, shackled, and verbally abused does not give rise to a claim of excessive force under § 1983); *Horton v. Town of Brookfield,* 2001 WL 263299, * 7 (D.Conn. March 15, 2001);

*Scott v. County of Nassau,* 1998 WL 874840, *5 (E.D.N.Y Dec. 11, 1998); *Murphy v. Neuberger,* 1996 WL 442797, at * 8 (S.D.N.Y. Aug. 6, 1996).

■■■■ If what Plaintiff characterizes as an excessive force claim is really a claim that the Fourth Amendment forbids a custodial arrest for a misdemeanor offense carrying no jail time, the argument is precluded by a recent decision of the United States Supreme Court. *See Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 1541–42, 149 L.Ed.2d 549 (2001) (holding that arresting a person for a misdemeanor traffic violation did not violate the Fourth Amendment).[3]

Thus, for all these reasons, Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiff's excessive force claim, and the claim is **DISMISSED WITH PREJUDICE.** Defendants' Motion is **DENIED,** however, with respect to Plaintiff's false arrest claim.

### 2. Qualified Immunity

■■■■ Officer Rodriguez makes a claim for qualified immunity. The Fifth

---

Some Courts have read *Petta* to allow Fourth Amendment claims to be based on purely psychological injuries. *See Peters v. City of Biloxi,* 57 F.Supp.2d 366, 374–75 (S.D.Miss. 1999) (reading *Petta* to hold that the absence of physical injury is a factor which may show that the force used was not excessive, but should be viewed in the totality of the circumstances); *Hodge v. Layrisson,* 1998 WL 564263, *6 (E.D.La. Sept.1, 1998) (holding that a Fourth Amendment excessive force claim could be predicated on a purely psychological injury, based on *Petta* ); *Richard v. City of Harahan,* 6 F.Supp.2d 565, 573 (E.D.La.1998) ("The requirement of some injury does not necessarily mean a physical injury or even require physical contact."). For the purposes of this Motion, the Court need not weigh in on the issue.

3. Whether a warrantless arrest for a misdemeanor offense not committed in an officer's

presence is per se a Fourth Amendment violation is a question apparently left open by the Supreme Court in *Lago Vista*. *See id.,* 532 U.S. at —— n. 11, 121 S.Ct. at 1550 n. 11 ("We need not, and thus do not, speculate whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests."). Nevertheless, many Circuits have held that any requirement that the offense be committed in an officer's presence for a misdemeanor arrest is not of constitutional dimension. *See Atwater v. City of Lago Vista,* 195 F.3d 242, 245 n. 3 (5th Cir. 1999) (collecting authorities), *aff'd* 532 U.S. ——, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). Thus, although the alleged misdemeanor offense was not committed in Officer Rodriguez's presence, the Court concludes that no Fourth Amendment violation exists for the custodial arrest itself.

Circuit has developed a two-step process for the examination of a claim of qualified immunity. The first inquiry is whether Plaintiff has alleged a violation of a clearly established constitutional right. *See King v. Chide,* 974 F.2d 653, 656 (5th Cir.1992); *see also Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). As discussed in the previous section, Plaintiff has properly plead a claim for false arrest. The right to be free from arrest without probable cause is clearly established. *See Beck v. State of Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964) (constitutionality of arrest depends on probable cause).

The next step of the qualified immunity analysis is to judge the reasonableness of the alleged behavior. *See King,* 974 F.2d at 657. Again, this is a fact-specific inquiry, in which the Court must determine whether Officer Rodriguez's actions were objectively reasonable in view of the facts available to him. *See Lampkin v. City of Nacogdoches,* 7 F.3d 430, 435 (5th Cir. 1993). Pleading that an arrest was made without probable cause necessarily entails the allegation that the action was objectively unreasonable. *See Goodson v. City of Corpus Christi,* 202 F.3d 730, 740 (5th Cir.2000) (equating the test for qualified immunity with that of whether probable cause exists). Thus, because the Court has concluded that Plaintiff has pled a claim for false arrest, it follows that Plaintiff's allegations can survive a Rule 12 Motion to Dismiss on qualified immunity grounds.

### 3. *Municipal Liability*

■ Because Plaintiff's suit names a municipality as a defendant, Plaintiff must also allege a basis for municipal liability. Although municipalities are "persons" within the meaning of § 1983, they may only be held liable if the constitutional harm suffered was the result of an "official policy, custom, or pattern." *See Monell v. Dept. of Social Services,* 436 U.S. 658, 692–94, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *Burns v. City of Galveston,* 905 F.2d 100, 102 (5th Cir.1990). Municipalities may not be held liable under either a theory of respondeat superior or vicarious liability. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 817, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; *Doe v. Taylor Indep. School Dist.,* 15 F.3d 443, 452 (5th Cir. 1994) (en banc). In addition, municipalities may not be held liable under § 1983 for mere negligence in oversight. *See Rhyne v. Henderson Cty.,* 973 F.2d 386, 392 (5th Cir.1992) (*citing City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)).

■ In limited circumstances, it is possible to make the required showing that the constitutional deprivations resulted from an "official policy, custom, or pattern" by demonstrating that the municipality failed to train or supervise its officers, or adopted improper hiring and retention practices. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) (holding that "inadequacy of police training may serve as a basis for § 1983 liability" but only where "the failure to train amounts to deliberate indifference to the rights of the persons with whom the police come into contact"). But while the failure of a municipality to adopt proper policies may sometimes amount to an "official policy, custom, or pattern", this is truly the exceptional case. *See Board of the County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 404–05, 117 S.Ct. 1382, 1388–89, 137 L.Ed.2d 626 (1997) (declaring that "[i]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the mu-

nicipality ... the plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."). The actions of the municipality before and after the event in question shed light on the actual policy or custom in existence.

■ The Court notes that actually establishing liability under § 1983 for improper hiring is a difficult task. At trial, Plaintiff must show evidence of a custom or policy, which caused Plaintiff's injuries, and which is attributable to the City of Brazoria. *See Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984) (en banc). More than one instance of constitutional injury is normally required to demonstrate such a policy or custom. *See Spiller v. City of Texas City,* 130 F.3d 162, 167 (5th Cir.1997). Furthermore, the Defendants are not necessarily liable just because they employ some alleged tortfeasors. *See Brown,* 520 U.S. at 403, 117 S.Ct. at 1387. "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* at 411, 117 S.Ct. at 1392.

■ But Plaintiff is not yet at the summary judgement or trial stage, so the only issue is whether she has stated a claim which survives Defendants' 12(b)(6) motion. Here, Plaintiff has alleged a constitutional violation, specifically a violation of the Fourth Amendment. Plaintiff has alleged that Defendants' agents acted under color of law. Plaintiffs have alleged that the police officer's conduct was the result of improper screening of officers that the City employs and the City's "get tough" policy on employees of Stewart Food. If

these allegations are ultimately proven true, they might suffice to establish municipal liability. Given that Plaintiff's allegations must be viewed in the light most favorable to their position, *see Malina,* 994 F.2d at 1125, and given that the Court is forbidden to impose any "heightened pleading standard" in this § 1983 action, *see Leatherman,* 507 U.S. at 167, 113 S.Ct. at 1163, the Court concludes that Plaintiff has stated a claim for which relief may be granted. Accordingly, Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiff's § 1983 claim against the City.

4. *Defendants' Motion For a More Definite Statement*

■ Turning to Defendants' Motion for a More Definite Statement, the Court observes that the Federal Rules of Civil Procedure do not contemplate the pleading of all relevant facts in intimate detail. *See Mitchell v. E–Z Way Towers, Inc.,* 269 F.2d 126, 132 (5th Cir.1959) ("In view of the great liberality of Fed.R.Civ.P. 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss."); *see also Leatherman,* 507 U.S. at 167, 113 S.Ct. at 1163 (rejecting a heightened pleading standard for § 1983 claims against municipalities). "Consequently, a motion for more definite statement is generally disfavored and is used to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail." *Frazier v. Southeastern Pennsylvania Transp. Auth.,* 868 F.Supp. 757, 763 (E.D.Pa.1994).

■ If, however, "a pleading to which a responsive pleading is permitted is so vague and ambiguous that a party cannot reasonably be required to frame a respon-

sive pleading," Rule 12(e) permits the party to "move for a more definite statement before interposing a responsive pleading." In making such a motion, the moving party must "point out the defects complained of and the details desired." Fed.R.Civ.P. 12(e). However, a motion for a more definite statement may not be used as a substitute for discovery. *See Mitchell,* 269 F.2d at 132.

Defendants ask that Plaintiff be compelled to plead with particularity how Officer Rodriguez violated her federal rights. The Fifth Circuit has imposed a heightened pleading standard in § 1983 cases. *Elliott v. Perez,* 751 F.2d 1472, 1481–82 (5th Cir.1985). The United States Supreme Court subsequently eliminated the requirement as it applies to suits against municipalities. *Leatherman,* 507 U.S. at 168, 113 S.Ct. at 1163. It did not reach the question of whether the requirement exists for claims against officials in their individual capacities. *Id.* at 166–67, 113 S.Ct. at 1162. Arguably, the reasoning of *Leatherman* applies with equal force to claims against individuals. In *Leatherman* the Court argued that the only provision for heightened pleadings in the Federal Rules of Civil Procedure was found in Rule 9(b) which requires particularity in complaints alleging fraud or mistake. Nowhere do the Rules make any heightened pleading requirement for suits against municipalities, and the creation of such a rule should come from amendment of the rules, not judicial interpretation. *Id.* at 168–69, 113 S.Ct. at 1163. The same argument could be made for suits against officers in their individual capacities, because the Federal Rules do not create a heightened pleading standard for § 1983 claims against individuals either. Several Courts in this Circuit have extended the holding of *Leatherman* in this fashion. *See Callaghan v. Congemi,* 1993 WL 114523, * 6 (E.D.La.1993); *Dodson v. City of Kenner,*

1993 WL 149111, at *1 (E.D.La.1993). Nevertheless, the Fifth Circuit has not drawn this conclusion from *Leatherman. See Schultea v. Wood,* 47 F.3d 1427, 1430 (5th Cir.1995).

In any event, Plaintiff has met its burden under even a heightened pleading standard. She has alleged that she did not steal any money, that Officer Rodriguez did not witness the alleged theft, and that no money was found on her person. This would support an inference that the Officer lacked probable cause, which though it may not ultimately be sufficient on its own to support liability, should at least entitle Plaintiff to further discovery. Plaintiff was not privy to the conversation between Mr. Stewart and Officer Rodriguez prior to her detention. Thus, Plaintiff is not aware of Officer Rodriguez's basis for arresting her apart from Mr. Stewart's allegation. If Mr. Stewart had said to Officer Rodriguez, for instance, "we didn't see her do it, but she looks guilty and we need to make an example of her," the Officer would not have had probable cause to arrest her. To require Plaintiff to plead facts, which absent discovery are as of yet unknown to her, would obviously be an unreasonable burden and would effectively hamstring Plaintiff in asserting her rights. Accordingly, Defendants' Motion to Require a More Definite Statement is **DENIED.**

### B. *Plaintiff's State Law Tort Claims*

#### 1. *Against the City*

A Texas municipality cannot be held liable for causes of action brought under Texas common law unless the Texas Legislature has expressly waived that city's governmental immunity. *See University of Texas Medical Branch v. York,* 871 S.W.2d 175, 177 (Tex.1994). This immunity has only been waived as to claims brought pursuant to the Texas Tort Claims

Act ("TTCA"), Tex. Civ. Prac. & Rem. Code Ann. § 101.001–101.109 (Vernon 1997). *See Lowe v. Texas Tech. University*, 540 S.W.2d 297, 298–99 (Tex.1976). Thus, Plaintiff's common-law causes of action against the City of Brazoria are not legally cognizable unless they are clearly waived by the TTCA. *See York*, 871 S.W.2d at 177; *Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980).

Plaintiff alleges intentional infliction of emotional distress—an intentional tort under Texas law. The TTCA provides that a municipality cannot be liable for any claims "arising out of assault, battery, false imprisonment, or any intentional tort . . . ." Tex. Civ. Prac. & Rem.Code Ann. § 101.057(2). A review of Plaintiff's Complaint reveals that her intentional tort allegations are not waived by the TTCA. Therefore, this claim is absolutely barred by sovereign immunity. *See City of San Antonio v. Dunn*, 796 S.W.2d 258, 261 (Tex.App.—San Antonio 1990, writ denied) (holding that no waiver of municipal liability existed under the TTCA where plaintiff's claims arose out of allegations of intentional torts, including false arrest and excessive force); *Townsend v. Memorial Medical Center*, 529 S.W.2d 264, 266–67 (Tex.App.—Corpus Christi 1975, writ ref'd n.r.e.); *accord Jones v. Houston Independent School Dist.*, 979 F.2d 1004, 1007 (5th Cir.1992).

■ The only other state law claim against the City is for negligence.[4] Plaintiff claims that the City was negligent in the hiring, retaining, and training of Defendant Rodriguez. Because Plaintiff has repeatedly alleged that Officer Rodriguez's conduct constitutes one or more intentional torts and must allege that the City acted intentionally or with deliberate indifference with regard to its hiring, retention, and supervision of Rodriguez, Plaintiff cannot now simply plead that the City was negligent in order to support additional state law negligence claims. *See Taylor v. Gregg*, 36 F.3d 453, 457 (5th Cir.1994); *Drain v. Galveston County*, 979 F.Supp. 1101, 1104–05 (S.D.Tex.1997) (Kent, J.) ("A plaintiff cannot pursue pendent state claims under the Texas Tort Claims Act where they are based on a single event, an event alleged under a contemporaneous § 1983 cause of action to be an intentional tort."). Defendant City of Brazoria is thus entitled to dismissal of Plaintiff's state law claims of intentional infliction of emotional distress and negligence. Consequently, these claims are **DISMISSED WITH PREJUDICE.**

2. *Against the Individual Defendants*

Against the individual Defendants, Plaintiff brings state law claims for defamation and intentional infliction of emotional distress.[5] Having carefully reviewed Plaintiff's live pleading and the relevant law, the Court concludes that Plaintiff has properly pled a claim for both defamation and intentional infliction of emotional distress as against the individual Defendants. Thus Defendants' Motion is **DENIED** with respect to these claims.

C. *Punitive Damages Against the City*

■ Defendants seek dismissal of Plaintiff's claim for punitive damages against the City. Punitive damages cannot

---

4. Plaintiff's Third Amended Original Complaint does not appear to bring a defamation claim against the City; if it did, however, the City would be immune because defamation is an intentional tort.

5. Plaintiff's Third Amended Original Complaint omits the invasion of privacy claim asserted in her Second Amended Original Complaint. Thus, the Court need not consider Defendants' Motion to Dismiss as it regards this claim.

be assessed against a municipality since the ultimate effect would be to punish the taxpayers rather than the wrongdoers, thereby negating any punitive purpose. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759–60, 69 L.Ed.2d 616 (1981). Thus Plaintiff's claim of punitive damages against the City is **DISMISSED WITH PREJUDICE.**

### CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiff's excessive force claim under 42 U.S.C. § 1983 against all Defendants, Plaintiff's state law claims against the City, and Plaintiff's claim for punitive damages against the City. These claims are **DISMISSED WITH PREJUDICE.** Defendants' Motion is **DENIED** as to all other claims. Moreover, Defendants' Motion for a More Definite Statement is **DENIED.** The parties are ·**ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**