# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00728-CR

**The State of Texas, Appellant**

**v.**

**Adelfo Ramirez Cruz, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
NO. D-1-DC-09-302890, HONORABLE BOB PERKINS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, the State challenges a pretrial order granting, in part, appellee Adelfo Ramirez Cruz's motion to suppress statements he made to law enforcement officials while in custody. In its sole issue on appeal, the State asserts that Cruz's statements are admissible because they are not the product of an interrogation. We reverse the trial court's order of suppression and remand this case for further proceedings.

## BACKGROUND

Cruz has been indicted for murdering Mario Carbajal-Plata, who was shot and killed while operating a taco stand in Austin.[1] *See* Tex. Penal Code § 19.02. Investigators with the Austin

---

[1] Cruz's actual name does not appear in the indictment, which was issued for "Jose Rodriguez . . . AKA: Jorge Negron . . . AKA: Pablo Jaimes." However, for purposes of the underlying pretrial motion to suppress and this interlocutory appeal, the parties concede that Cruz is the defendant named in the indictment.

Police Department recovered a soft drink bottle at the scene of the shooting that, according to a witness, the shooter consumed. Detective Jeff Greenwalt, the lead homicide detective assigned to this case, testified that investigators obtained latent fingerprints from the bottle which they entered into the Automated Fingerprint Identification System (AFIS), a national fingerprint database. The information obtained from AFIS was then run through the National Crime Information Center (NCIC), which Detective Greenwalt explained is a "nationwide database of arrests and sometimes convictions that are associated with a particular individual."

This database indicated that the fingerprints belonged to Jose Rodriguez, also known as Jorge Negron and Pablo Jaimes. Detective Greenwalt explained that Jose Rodriguez was the first name in the system merely because it was the name that the individual, later identified as Cruz, gave during his first arrest. *See supra* n.1. The other aliases included in the NCIC were names that Cruz gave during subsequent arrests, but the order in which these aliases appear is unrelated to an individual's actual name.

Detective Greenwalt testified that the NCIC indicated that Cruz had been arrested several times in the Chicago area. A call to Chicago law enforcement revealed that Cruz had a pending Illinois arrest warrant for a misdemeanor DWI. Based on this information, Detective Greenwalt secured an arrest warrant for Cruz for the murder of Carbajal-Plata. Detective Greenwalt then called the United States Marshals' Office in Chicago and asked them to arrest Cruz for the Illinois DWI, but requested that they not mention the homicide investigation or Texas warrant. United States Marshals arrested Cruz for the DWI warrant and took him to a Chicago-area jail. Cruz was booked by local law enforcement, who obtained some background information from Cruz during the booking process.

Detective Greenwalt and his partner, Detective Frank Rodriguez, arrived at the jail approximately fourteen hours after Cruz had been arrested. Without initially identifying themselves as Austin police officers or mentioning the arrest warrant for murder, Detectives Greenwalt and Rodriguez asked Cruz a series of biographical questions before reading Cruz his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (requiring exclusion of statements made during custodial interrogation if law enforcement does not admonish accused of certain constitutionally protected rights); *see also* Tex. Code Crim. Proc. art. 38.22, § 3 (excluding oral statements made by accused during custodial interrogation unless certain procedures, including recorded *Miranda* warnings, are followed). Specifically, Detective Rodriguez asked Cruz his name, address, phone number, whether he was living with anyone, and how long he had been in the United States. Cruz answered these questions directly, though many of his responses included false information.[2] Cruz gave the detectives a Chicago-area cell phone number, but then claimed that the phone belonged to his girlfriend. After this initial questioning, Detective Rodriguez advised Cruz of his *Miranda* rights, Cruz immediately invoked his right to counsel, and the questioning ceased. *See* U.S. Const. amend. VI (guaranteeing accused's right to be represented by counsel in all criminal proceedings); Tex. Const. art. I, § 10.

Based on the information they obtained from the initial interview, Detectives Greenwalt and Rodriguez went to Cruz's Chicago home and, with Cruz's girlfriend's consent, searched the property and obtained a birth certificate that finally revealed Cruz's real name. The detectives also spoke with Cruz's girlfriend, who confirmed that Cruz regularly used the cell phone

---

[2] For example, Cruz identified himself as Jorge Negron, gave a false date of birth, and stated that he did not know his own address.

3

matching the phone number Cruz had previously provided. Detective Greenwalt subpoenaed the phone records for that number, and tracking information placed the phone in Austin near the scene of the murder at the time the murder was committed. Cruz was arrested pursuant to the Austin warrant and extradited to Texas.

Cruz filed a pretrial motion to suppress all evidence obtained as a result of Detectives Greenwalt's and Rodriguez's investigation in Chicago, including Cruz's initial "un-Mirandized" statements to Detective Rodriguez, the evidence discovered in Cruz's Chicago home, and the phone records from Cruz's cell phone. Following a pretrial hearing on the motion, the trial court granted Cruz's motion to suppress in part, ordered the suppression of all statements that Cruz made during his initial questioning by Detective Rodriguez, but denied the motion to suppress in all other respects.[3] The trial court issued written findings of fact and conclusions of law to support its ruling. The State filed this interlocutory appeal challenging the trial court's order suppressing Cruz's initial statements. *See* Tex. Code Crim. Proc. art. 44.01(a)(5) (granting state right to appeal pretrial order suppressing evidence if jeopardy has not attached).

**STANDARD OF REVIEW**

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). A trial court abuses its

---

[3] The trial court admitted the evidence recovered from Cruz's home and the phone records from Cruz's cell phone. *See Michigan v. Tucker*, 417 U.S. 433, 452 (1974) (concluding that fruit-of-the-poisonous-tree doctrine does not require exclusion of un-Mirandized statements); *Baker v. State*, 956 S.W.2d 19, 23–24 (Tex. Crim. App. 1997) ("[M]ere violations of the *Miranda* rule are not covered by the state exclusionary rule contained in Article 38.23" of Code of Criminal Procedure.).

4

discretion if its ruling is arbitrary and unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A trial court's ruling on a motion to suppress will be affirmed if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

"In reviewing a trial court's ruling on a *Miranda*-violation claim, an appellate court conducts a bifurcated review." *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). We afford almost total deference to a trial court's determination of historical facts, but review pure questions of law de novo. *Id.* Likewise, we give almost total deference to a trial court's resolution of a mixed question of law and fact if the question turns on the credibility and demeanor of witnesses. *Id.* However, if credibility and demeanor are not necessary to the resolution of a mixed question of law and fact, we review the question de novo. *See id.*; *Young*, 283 S.W.3d at 873.

"The decision as to whether custodial questioning constitutes 'interrogation' under *Miranda* is a mixed question of law and fact." *Alford*, 358 S.W.3d at 653. When, as here, the custodial questioning has been videotaped and the underlying events are not in dispute, the trial court's ruling is merely an application of uncontested facts to the law. *See Herrera v. State*, 194 S.W.3d 656, 659 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Mayes v. State*, 8 S.W.3d 354, 358 (Tex. App.—Amarillo 1999, no pet.). Thus, we review the trial court's ruling on the suppression motion de novo.

**DISCUSSION**

In its sole issue on appeal, the State asserts that the trial court erred in granting Cruz's motion to suppress the statements he made while in custody. Specifically, the State argues that

Detective Rodriguez's biographical questions were "booking questions" or, alternatively, routine inquiries that are "normally attendant to arrest and custody," and thus did not constitute interrogation within the meaning of *Miranda*. *See generally Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) (discussing what constitutes interrogation for *Miranda* purposes). Therefore, according to the State, Detective Rodriguez and Detective Greenwalt were not required to Mirandize Cruz before asking the biographical questions.

Both the *Miranda* line of cases and article 38.22 of the Texas Code of Criminal Procedure provide that a statement made by the accused during a custodial interrogation is inadmissible unless the accused was properly admonished of certain constitutional rights. *See Miranda*, 384 U.S. at 444; Tex. Code Crim. Proc. art. 38.22, § 2 (listing admonishments that must be given). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way." *Miranda*, 384 U.S. at 444; *see also Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007) (adopting *Miranda* line of cases' definition of custodial interrogation to article 38.22). However, "the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Innis*, 446 U.S. at 300. In this case, it is undisputed that Cruz was in custody when Detective Rodriguez asked his initial questions. Thus, the only issue is whether those questions constituted interrogation within the meaning of *Miranda*. *See id.*

"Interrogation, as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* (internal quotations omitted).

6

"[T]he *Miranda* safeguards do not exist to protect suspects from the compulsion inherent in custody alone, nor do they protect suspects from their own propensity to speak, absent some police conduct which knowingly tries to take advantage of the propensity." *Jones v. State*, 795 S.W.2d 171, 176 n.5 (Tex. Crim. App. 1990). Thus, certain types of questions are not considered interrogation, including "routine inquiries, questions incident to booking, broad general questions such as 'what happened' upon arrival at the scene of a crime, and questions mandated by public safety . . . ." *Id.* at 174. We apply an objective standard to determine whether custodial questioning constituted interrogation. *See United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002). We do not look at the statements made by police in a vacuum, but rather we construe those statements in light of the circumstances of the interaction between the police and the accused on each particular occasion. *Morris v. State*, 897 S.W.2d 528, 532 (Tex. App.—El Paso 1995, no pet.); *see also Heiden v. State*, No. 03-07-00614-CR, 2009 WL 790182, at *5 (Tex. App.—Austin Mar. 25, 2009, no pet.) (mem. op., not designated for publication) (listing cases in which police questions were found to be interrogation based on circumstances).

In this case, the State primarily relies on the "booking-questions exception" to *Miranda*, asserting that Detective Rodriguez's questions "reasonably relate[d] to a legitimate administrative concern" and therefore do not constitute interrogation. *See Alford*, 358 S.W.3d at 658–59 (concluding that if question is reasonably related to administrative concern, answers do not violate *Miranda* regardless of whether police officer should have known question likely to illicit incriminating response). The State asserts that Detectives Rodriguez and Greenwalt had a legitimate administrative reason to ask these background questions in order to (1) help complete Cruz's

7

booking in the Illinois jail and (2) facilitate Cruz's eventual transfer to Texas. However, the detectives never testified that they intended to—or in fact did—share Cruz's answers with Illinois officials. Furthermore, there was no discussion in the record about Cruz's ultimate transfer to Texas. Thus, even though the State may have identified hypothetically valid administrative reasons for why officers might ask these questions, these reasons require some speculation beyond the facts in the record. *Cf. id.* at 662 (noting that administrative reason for booking question was indisputably apparent from record). We cannot conclude on the record presented to us that the booking-questions exception applies.

Nevertheless, the State also argues that the questions posed to Cruz were routine inquiries normally attendant to arrest and custody, and therefore the questions did not constitute interrogation. *See Jones*, 795 S.W.2d at 174 n.3 (listing several examples of routine inquiries that did not constitute interrogation); *see also Alford*, 358 S.W.3d at 660 (noting that booking-questions exception arose from "questions normally attendant to arrest and custody" language). This is a related but distinct exception to *Miranda*. *See Jones*, 795 S.W.2d at 174. We will begin our analysis of this exception by determining whether Detective Rodriguez's questions were routine inquiries that do not constitute interrogation under *Miranda*.

Like booking questions, routine inquiries that are normally attendant to arrest and custody do not constitute interrogation because they do not "involve the psychological intimidation that *Miranda* is designed to prevent." *Alford*, 358 S.W.3d at 654 (internal quotations omitted); *see also Innis*, 446 U.S. at 300 (noting that interrogation requires "measure of compulsion above and beyond that inherent in custody itself"). Furthermore, routine questions are not the type of questions

that police should know beforehand are likely to elicit an incriminating response. *See Innis*, 466 U.S. at 302 n.5 (explaining that "incriminating response" includes inculpatory and exculpatory responses that are either direct confessions or statements that amount to admission of part of offense); *McCambridge v. State*, 712 S.W.2d 499, 505 (Tex. Crim. App. 1986) (concluding that routinely asking suspect arrested for driving while intoxicated whether he will submit to breathalyser is not interrogation). Thus, although the accused's response to routine questions may ultimately be incriminating or provide information which furthers the police's investigation, the responses are nevertheless admissible because they are not the product of an interrogation. *See Innis*, 446 U.S. at 302 (concluding that accused's post-arrest statement about location of murder weapon was not product of interrogation).

Under this rubric, Texas courts have consistently held that "[a]sking a person his name, address and telephone number is not interrogation" within the meaning of *Miranda* because it is not likely to illicit an incriminating response. *See, e.g.*, *Ex parte Lewis*, 165 S.W.3d 376, 383 (Tex. App.—Fort Worth 2005), *rev'd on other grounds* 219 S.W.3d 335 (Tex. Crim. App. 2007); *Massie v. State*, 744 S.W.2d 314, 317 (Tex. App.—Dallas 1988, pet. ref'd); *Ford v. State*, No. 01-99-00649-CR, 2001 WL 832360, at *2 (Tex. App.—Houston [1st Dist.] July 19, 2001, no pet.) (mem. op., not designated for publication) (noting that asking accused his name, address, social security number, and place of employment are questions normally attendant to arrest and custody). This analysis is consistent with that of the federal circuit courts, which have held that "questions seeking biographical information"—including the accused's name, address, and phone number—"do not constitute interrogation or its functional equivalent." *Gladden v. Roach*, 864 F.2d 1196, 1198

(5th Cir. 1989) (listing cases from 4th, 7th, and 11th federal circuits which concluded that biographical questions are not interrogation); *see also United States v. Allen*, 169 F. App'x 634, 636 (2d Cir. 2006) (stating that request for routine information necessary for basic identification is not interrogation). As one court explained, "it is conceivable that questions about a person's identity or residence could be incriminating, or lead to incriminating information," but if identity is not an element of the underlying offense, police would not reasonably believe that biographical questions are likely to lead to incriminating information. *Gladden*, 864 F.2d at 1198.

We agree that biographical questions—including questions about an accused's name, address, and phone number—generally are routine inquiries attendant to arrest and custody that do not constitute interrogation. These background questions are not the type of questions that police should know beforehand are likely to elicit an incriminating response, either in the form of a confession or admission to part of the offense. *See Innis*, 466 U.S. at 302 n.5. Furthermore, it is unlikely that an accused would feel "the psychological intimidation that *Miranda* is designed to prevent" merely by being asked his name, address, and contact information. *See Alford*, 358 S.W.3d at 654. Thus, even though these questions may occur while an accused is in custody and can assist the police in their investigation, they generally are not the types of questions that constitute interrogation.[4]

In this case, Detective Rodriguez's initial questions were purely biographical; he asked only Cruz's name, address, phone number, whether he lived with anyone, and when he moved

---

[4] Of course, "it is conceivable that questions about a person's identity or residence could be incriminating" under certain circumstances, but those circumstances appear to be the exception rather than the rule. *See Gladden v. Roach*, 864 F.2d 1196, 1198 (5th Cir. 1989) (noting that biographical question could be interrogation if identity was element of offense).

to the United States. None of these questions relate to an element of murder and there is nothing in the record to indicate that Detective Rodriguez should have known that these questions were likely to illicit an incriminating response. The fact that Detective Rodriguez subjectively hoped that Cruz's phone number or address might lead to relevant evidence does not transform this otherwise routine inquiry into an interrogation. *See Alford*, 358 S.W.3d at 653 ("The *Innis* test focuses primarily upon the perceptions of the suspect, rather than the intent of the police." (internal quotations omitted)).

Based on this record, we conclude that Detective Rodriguez's initial biographical questions were routine inquiries attendant to arrest and custody. *See Jones*, 795 S.W.2d at 174. Therefore, these questions did not constitute an interrogation for purposes of *Miranda* or article 38.23 of the Code of Criminal Procedure, and Cruz's responses to these questions are admissible even in the absence of *Miranda* warnings. *See Innis*, 446 U.S. at 300 (noting that *Miranda* warnings only required during custodial interrogation); *Alford*, 358 S.W.3d at 653. We sustain the State's sole appellate issue and reverse the trial court's order suppressing Cruz's responses to Detective Rodriguez's initial questions.

## CONCLUSION

We reverse the trial court's order suppressing Cruz's statements and remand the cause to the trial court for further proceedings.

11

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Reversed and Remanded

Filed:   January 10, 2014

Do Not Publish

12